ROBERT E. DIETTER *v.* CATHERINE DIETTER
(AC 15995)

O'Connell, C. J., and Lavery and Sullivan, Js.

Argued February 22—officially released August 17, 1999

*Jeffrey R. Babbin*, with whom was *John W. Barnett*, for the appellants (plaintiff and third party defendants).

*Mark R. Soboslai*, for the appellee (defendant).

*Opinion*

LAVERY, J. The plaintiff, Robert E. Dietter, initiated this marital dissolution action, and the defendant, Catherine Dietter, filed an amended cross complaint alleging

that the plaintiff, with the assistance of the cross complaint defendants,[1] fraudulently transferred assets from the marital estate. The plaintiff and cross complaint defendants appeal from the judgment of the trial court rendered in favor of the defendant on two counts of the cross complaint.[2] On appeal, the plaintiff claims that the trial court improperly (1) concluded that, in filing a voluntary petition in bankruptcy on behalf of a corporation, he fraudulently transferred the corporation's assets and a $472,889 receivable from the marital estate, (2) determined that he and the cross complaint defendants fraudulently transferred assets from the marital estate when they terminated a testamentary trust in which the plaintiff held a remainder interest, (3) admitted into evidence a confidential attorney-client communication and (4) ordered the cross complaint defendants to transfer certain property to the defendant as an award of lump sum alimony. We affirm the trial court's judgment in part and reverse it in part.

The record discloses the following facts and procedural history that are relevant to the issues on appeal. The plaintiff and the defendant married in 1962. In 1969, the plaintiff and the defendant formed Dietter's Garden Center, Inc. (Garden Center), a corporation that conducted operations at 3936 Whitney Avenue in Hamden. In 1976, the plaintiff acquired title to the property at

---

[1] The cross complaint defendants are the plaintiff's mother, Elizabeth Dietter, and the plaintiff's brothers, Ronald Dietter and Theodore Dietter.

[2] The defendant claims that the plaintiff's mother and two brothers do not have standing to appeal because the trial court rendered a judgment of default against each of them for failure to appear at trial. We need not reach this issue because we conclude that the plaintiff has standing to raise the first, second and third claims. In our review of the plaintiff's first claim, because we conclude that it is necessary to vacate the trial court's financial orders, it is unnecessary for us to reach the plaintiff's fourth claim, which questions the propriety of the trial court's financial orders. Because we need not review the plaintiff's fourth claim, it is unnecessary for us to address the defendant's claim that the plaintiff lacks standing to challenge the propriety of the trial court's financial orders.

3936 Whitney Avenue. The defendant, the plaintiff and the plaintiff's mother were shareholders of Garden Center.

In 1988, the plaintiff and three individuals entered into a partnership, Hamden Garden Associates (Garden Associates), which purchased property located at 3876 Whitney Avenue in Hamden. The four members of this partnership formed Dietter's Flower Farm, Inc. (Flower Farm), a corporation that conducted operations at 3876 Whitney Avenue. The plaintiff testified that he owned one fourth of the stock in Flower Farm and, in 1991, he purchased all of Flower Farm's outstanding shares.

In April, 1988, the board of directors of Garden Center passed a corporate resolution, which was signed by both the plaintiff and the defendant, authorizing the plaintiff to make all decisions on behalf of Garden Center. In January, 1991, the plaintiff initiated this marital dissolution action. On February 15, 1991, the plaintiff drafted a notice to the shareholders of Garden Center concerning a special meeting to authorize the merger of Garden Center and Flower Farm. On February 23, 1991, the merger was approved, and the surviving corporation was known as Flower Farm.

In March, 1992, the plaintiff, acting in his capacity as the president of Flower Farm, filed a voluntary petition in bankruptcy on behalf of Flower Farm. The petition disclosed that Flower Farm had total assets of $69,598 and total liabilities of $789,169. Among its many creditors, Flower Farm disclosed that it owed $74,120 to Great Country Bank. The trustee in bankruptcy transferred Flower Farm's assets to Great Country Bank in satisfaction of its secured lien. There is no evidence in the record that any other creditors received a disbursement from the bankruptcy proceeding. In April, 1992, Great Country Bank sold these assets for $30,000 to Dietter's, Inc., a corporation formed by the plaintiff's

mother; however, there is no finding in the record as to the value of these assets. Approximately eighteen months later, the plaintiff's mother sold these assets to LDRK, Inc., for $60,000.

In May, 1995, the defendant filed an amended cross complaint against the plaintiff, his mother and two brothers. The second count of the cross complaint alleged that, in filing the petition in bankruptcy on behalf of Flower Farm, the plaintiff fraudulently transferred assets from the marital estate to his mother. The second count also alleged that the plaintiff fraudulently transferred substantially all of the equity in the real property at 3936 Whitney Avenue to his mother. The third count of the cross complaint alleged that the plaintiff, with the assistance of his mother and two brothers, fraudulently transferred assets from the marital estate when they terminated a testamentary trust in which the plaintiff held a remainder interest and transferred the trust assets to an inter vivos trust.

In May, 1996, the trial court concluded that the marriage of the parties had irretrievably broken down and it dissolved the marriage. The trial court determined that the plaintiff and the cross complaint defendants defrauded the defendant of her interest in the marital estate. It stated that "[t]he defendant here has claimed that all of the transfers that the plaintiff has made or has had made were fraudulent transfers made with the intent to defraud her of marital assets. . . . [N]early every statutory indication of actual intent to defraud has been proven." On the second count of the defendant's amended cross complaint, the trial court found that, in filing the petition in bankruptcy on behalf of Flower Farm, the plaintiff fraudulently transferred Flower Farm's assets and a $472,889 receivable from the marital estate.[3] On the third count of the amended cross complaint, the trial court determined that the termination

---

[3] In its memorandum of decision, the trial court did not address the allegations set forth in paragraph seven of the second count of the amended

of the testamentary trust and the transfer of the trust assets to an inter vivos trust constituted a fraudulent transfer of assets from the marital estate.

As an award of lump sum alimony, the trial court ordered the plaintiff's mother and brother to transfer to the defendant, free of any encumbrances, all of their right, title and interest in 3936 Whitney Avenue, including the business, personalty, rental apartments, buildings and real property. The trial court also ordered the plaintiff's mother to transfer to the defendant any interest she has in the stock and assets of Dietter's, Inc., so much as pertains to 3936 Whitney Avenue, and any claims against any successor entity pursuant to the contract of sale of said business to LDRK, Inc.

I

The plaintiff first claims that the trial court improperly determined that he fraudulently transferred assets from the marital estate (1) when he filed a voluntary petition in bankruptcy on behalf of Flower Farm and the trustee in bankruptcy transferred Flower Farm's assets to a secured creditor, which resold these assets to the plaintiff's mother, and (2) when, as a result of the bankruptcy, Flower Farm discharged a $472,889 loan it owed to the plaintiff and the defendant as shareholders of the corporation. We agree with both of the plaintiff's claims.

Prior to examining each of these claims, it is first necessary to set forth the relevant legal principles that guide our review. The law in effect at the time the alleged fraudulent transfers took place is controlling. *Farrell* v. *Farrell*, 36 Conn. App. 305, 312 n.8, 650 A.2d 608 (1994); *Tyler* v. *Schnabel*, 34 Conn. App. 216, 220–21, 641 A.2d 388 (1994). In the present case, because these

cross complaint, wherein the defendant claimed that the plaintiff had fraudulently transferred to his mother substantially all of the equity in the real property located at 3936 Whitney Avenue.

transfers took place after October 1, 1991, this case is controlled by the Uniform Fraudulent Transfer Act (Fraudulent Transfer Act), General Statutes § 52-552a et seq. See Public Acts 1991, No. 91-297.

After applying General Statutes § 52-552e[4] to the facts in the record before us, the trial court concluded that, acting with the actual intent to defraud the defendant, the plaintiff fraudulently transferred both of the assets in question from the marital estate. In cases arising under General Statutes § 52-552, the statutory predecessor to the Fraudulent Transfer Act, which was repealed by Public Acts 1991, No. 91-297, § 13, we held that "[t]he determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances. . . . Such a fact is, then, not ordinarily proven by direct evidence, but rather, by inference from other facts proven—the indicia or badges of fraud." (Internal quotation marks omitted.) *Shawmut Bank* v. *Brooks Development Corp.*, 46

[1] General Statutes § 52-552e provides in relevant part: "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor . . . .

"(b) In determining actual intent under subdivision (1) of subsection (a) of this section, consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."

Conn. App. 399, 406, 699 A.2d 283 (1997); see *Tyers* v. *Coma*, 214 Conn. 8, 11, 570 A.2d 186 (1990); *Cook* v. *Bieluch*, 32 Conn. App. 537, 551–52, 629 A.2d 1175, cert. denied, 228 Conn. 910, 635 A.2d 1229 (1993). We see no reason to depart from that standard under the Fraudulent Transfer Act.

A

Before reaching either of the plaintiff's claims, we must first determine whether the trial court improperly allocated the burden of proof on these issues to the defendant. Although the trial court rendered judgment on a portion of the second count of the amended cross complaint in favor of the defendant, she claims that the trial court improperly allocated to her the burden of proving that both of these transactions constituted fraudulent transfers of assets from the marital estate. She claims that because the plaintiff was an officer of Flower Farm, he owed her a fiduciary duty as a shareholder of Flower Farm. As such, she contends that the trial court should have allocated the burden of proof to the plaintiff to establish fair and equitable dealing by clear and convincing evidence.

The plaintiff responds that because the second count of the defendant's amended cross complaint alleges neither the existence of a fiduciary duty nor the breach of a fiduciary duty, there was no basis for the trial court to allocate the burden of proof to him, and, therefore, the trial court properly allocated the burden of proof to the defendant. We agree with the plaintiff.

A party who seeks to set aside a transfer as fraudulent bears the burden of proving fraudulent intent by clear and convincing evidence. See *Tyers* v. *Coma*, supra, 214 Conn. 11; *Tessitore* v. *Tessitore*, 31 Conn. App. 40, 43, 623 A.2d 496 (1993). "Our law on the obligations of a fiduciary is well settled. . . . Once a [fiduciary] relationship is found to exist, the burden of proving

fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence." (Citation omitted; internal quotation marks omitted.) *Murphy* v. *Wakelee*, 247 Conn. 396, 400, 721 A.2d 1181 (1998).

"[T]he interpretation of pleadings is always a question of law for the court . . . . We have pointed out that [t]he burden [is] upon the pleaders to make such averments that the material facts should appear with reasonable certainty; and for that purpose [the pleaders] were allowed to use their own language. Whenever that language fails to define *clearly* the issues in dispute, the court will put upon it such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice *between the parties*." (Emphasis in original; internal quotation marks omitted.) *United Components, Inc.* v. *Wdowiak*, 239 Conn. 259, 264, 684 A.2d 693 (1996).

The second count of the defendant's amended cross complaint alleged neither that the plaintiff owed her a fiduciary duty nor that the plaintiff breached a fiduciary duty. Practice Book § 10-4 provides, however, that "[i]t is unnecessary to allege any promise or duty which the law implies from the facts pleaded." In the present case, a fiduciary duty cannot be implied from the facts pleaded because the second count of the amended cross complaint identified the plaintiff neither as a fiduciary nor as an officer or director of Flower Farm, and did not set forth any facts from which a fiduciary duty might be implied. See *United Components, Inc.* v. *Wdowiak*, supra, 239 Conn. 264. Because the second count of the amended cross complaint is most accurately described

as claiming that the plaintiff, acting in his capacity as a spouse and not as a fiduciary, fraudulently transferred assets from the marital estate, we conclude that the trial court properly allocated the burden of proof on the second count of the amended cross complaint to the defendant.

B

The plaintiff claims that the trial court improperly determined that he fraudulently transferred assets from the marital estate when, acting in his capacity as president of Flower Farm, he filed a voluntary petition in bankruptcy and the trustee in bankruptcy subsequently transferred Flower Farm's assets to a secured creditor, which resold these assets to the plaintiff's mother. We agree with the plaintiff.

In March, 1992, the plaintiff, acting in his capacity as the president of Flower Farm, filed a voluntary petition in bankruptcy on behalf of Flower Farm. The petition in bankruptcy disclosed that Flower Farm had total assets of $69,598 and total liabilities of $789,169, of which $137,243 was secured debt. Among its creditors, Flower Farm disclosed that it owed $74,120 to Great Country Bank. The bankruptcy court appointed Attorney Anthony A. Novak to serve as the trustee in bankruptcy. In a signed affidavit, Novak stated: "Acting in the capacity as trustee in bankruptcy, I had occasion to receive and inspect a UCC-1 security instrument (or lien) a copy of which is attached hereto as Exhibit A. As prima facie evidence of a valid security interest, Exhibit A by operation of the Uniform Commercial Code entitled the secured party (Great Country Bank) to take immediate lawful possession and sell the collateral of Dietter's Flower Farm, Inc." The defendant does not dispute that Great Country Bank held a valid perfected security interest in Flower Farm's assets. Moreover, she neither claims, nor does the record disclose,

that she or her husband were secured creditors of Flower Farm.

The trial court found that in April, 1992, Great Country Bank sold Flower Farm's assets to the plaintiff's mother for $30,000, however "[t]here was no finding [in the record] as to the value of the interest so sold." Approximately eighteen months later, the plaintiff's mother sold these assets to LDRK, Inc., for $60,000. William DeMayo, an accountant for the plaintiff's mother, testified that between the purchase of those assets by the plaintiff's mother and their sale approximately eighteen months later, she lent the business $40,000, and that she had not received payment for these loans. After applying the criteria set forth in § 52-552e, the trial court concluded that the plaintiff transferred these assets from the marital estate with the intent to defraud the defendant.

We have already established that the trial court's determination that the plaintiff transferred these assets from the marital estate with the intent to defraud the defendant is a question of fact. The plaintiff claims that the trial court's finding is clearly erroneous as a matter of law because this transaction did not constitute a transfer of assets within the meaning of the Fraudulent Transfer Act. "This court may reject a factual finding if it is clearly erroneous, in that as a matter of law it is unsupported by the record, incorrect, or otherwise mistaken." (Internal quotation marks omitted.) *Lupien* v. *Lupien*, 192 Conn. 443, 445, 472 A.2d 18 (1984); see *Web Press Services Corp.* v. *New London Motors, Inc.*, 205 Conn. 479, 483, 533 A.2d 1211 (1987).

Because the appellate courts of this state have not had occasion to interpret and apply the Fraudulent Transfer Act, we look for guidance to case law from other states that have adopted the Fraudulent Transfer Act. In 1985, Oregon adopted the Fraudulent Transfer

Act. See Or. Rev. Stat. § 95.200 et seq.; 7A U.L.A., Business and Financial Laws (West 1999), p. 266. In *Kellstrom Bros. Painting* v. *Carriage Works, Inc.*, 117 Or. App. 276, 278, 844 P.2d 221 (1992), cert. denied, 316 Or. 162, 856 P.2d 317 (1993), the Oregon Court of Appeals held that the property of a debtor that had been subject to a valid perfected security interest held by a bank was not an "asset" within the meaning of the Fraudulent Transfer Act and, thus, the bank's sale of the debtor's property that had been repossessed by the bank was not a "transfer" by the debtor within the meaning of the Fraudulent Transfer Act and the creditor could not void the sale for being fraudulent under the Fraudulent Transfer Act.

In *Kellstrom Bros. Painting*, the plaintiff furnished $4288 in supplies to the defendant, Carriage Works, Inc., for which it did not receive payment. Id., 278. A bank held a valid perfected security interest in the assets of Carriage Works, Inc., to secure loans in excess of $290,000. Id., 279. When the loans became delinquent, the bank repossessed the collateral, which was worth less than the amount of the loans, and sold the collateral at a public sale. Id. Donald Rowlett, one of the former shareholders of Carriage Works, Inc., purchased a portion of the collateral at this sale and formed a new entity that received this property. Id. The plaintiff then brought suit under the Fraudulent Transfer Act. In rejecting the plaintiff's claim, the Court of Appeals held: "We agree with [the] defendants that the definitions show that [the Fraudulent Transfer Act] does not apply here. Before a creditor is entitled to relief under the [Fraudulent Transfer Act], there must have been a 'transfer' by the debtor, and there was no transfer by Carriage Works within the meaning of the act. [Or. Rev. Stat.] § 95.200 (12) provides that a 'transfer' means 'disposing of . . . an asset . . . .' An 'asset' does *not* include a debtor's property 'to the extent that it is

encumbered by a valid lien . . . .' [Or. Rev. Stat.] § 95.200 (2) (a). A lien includes a 'security interest created by agreement.' [Or. Rev. Stat.] § 95.200 (8). It is undisputed that [the] [b]ank held a valid security interest that encumbered all of the assets of Carriage Works. Neither was there a transfer from the debtor to Rowlett. [The] [b]ank transferred the collateral to Rowlett and another after the sale . . . . [Or. Rev. Stat.] § 95.240 does not provide a means by which [the] plaintiff could void the transfer from Carriage Works." (Emphasis in original.) *Kellstrom Bros. Painting* v. *Carriage Works, Inc.*, supra, 117 Or. App. 279;[5] see *Baker & Sons Equipment Co.* v. *GSO Equipment Leasing Co.*, 87 Ohio App. 3d 644, 651–52, 622 N.E.2d 1113 (1993) (equipment and inventory not considered "assets" within meaning of Fraudulent Transfer Act because fully encumbered by perfected security interest at time of transfer).

General Statutes § 52-552b (12) provides that " '[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." " 'Asset' means property of a debtor, but the term does *not* include: (A) Property to the extent it is encumbered by a valid lien . . . ." (Emphasis added.) General Statutes § 52-552b (2). " 'Lien' means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement"; General Statutes § 52-552b (8); and a " '[v]alid lien' means a lien that is effective against the

---

[5] While we recognize that several states that have adopted the Fraudulent Transfer Act have made modifications to the official text, the relevant definitions in our state's enactment of the Fraudulent Transfer Act are virtually identical to those of the Oregon enactment. Compare General Statutes § 52-552b with Or. Rev. Stat. § 95-200; see 7A U.L.A., supra, pp. 279–81.

holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." General Statutes § 52-552b (13).

In the present case, the record discloses that Great Country Bank held a valid perfected security interest in the assets of Flower Farm and that the trustee in bankruptcy transferred these assets to the bank in satisfaction of its secured lien. The defendant neither claims, nor does the record disclose, that the trustee transferred to Great Country Bank any assets that were not encumbered by a valid lien. The bank in turn sold these assets to the plaintiff's mother for $30,000, and the trial court made no finding as to the actual value of these assets. There is no dispute that Great Country Bank's security interest in these assets was effective against a subsequent judicial lien obtained by the defendant. In light of the definitions in § 52-552b and the reasoning employed in *Kellstrom Bros. Painting*, we conclude, as a matter of law, that the assets the trustee in bankruptcy transferred to Great Country Bank, which were encumbered by a valid lien, were not "assets" within the meaning of the Fraudulent Transfer Act, and, therefore, this transfer is not subject to the Fraudulent Transfer Act. The trial court therefore improperly included these assets in the marital estate.

C

The plaintiff next claims that the trial court improperly determined that the defendant established by clear and convincing evidence that he fraudulently transferred assets from the marital estate when he filed a voluntary petition in bankruptcy on behalf of Flower Farm, thereby discharging a loan of $472,889 Flower Farm owed to the plaintiff and the defendant as shareholders of the corporation. We agree with the plaintiff.

Flower Farm's petition in bankruptcy listed both the plaintiff and the defendant as creditors, the plaintiff in

the amount of $440,655 and the defendant in the amount of $32,234. The trial court found that this $472,889 debt represented loans that the plaintiff and the defendant made to Flower Farm in their capacities as shareholders. The defendant neither claims, nor does the record disclose, that any portion of this $472,889 debt was secured. After applying the criteria set forth in § 52-552e to this record, the trial court found that the defendant established by clear and convincing evidence that the plaintiff intended fraudulently to transfer the $472,889 receivable from the marital estate.

If a fraudulent transfer claim is joined with a marriage dissolution action, as in the present case, the issue is whether the transfer removed property from the marital estate that would otherwise have been subject to claims of equitable distribution. See *Tessitore* v. *Tessitore*, supra, 31 Conn. App. 42; *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 308, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990). The plaintiff claims that the trial court's finding is clearly erroneous because the record does not support its determination that this receivable constituted property that would otherwise have been subject to a claim of equitable distribution.

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *McNeil* v. *Riccio*, 45 Conn. App. 466, 472, 696 A.2d 1050 (1997). After a careful review of the entire record applying the appropriate standard of review, we conclude that the record does not support the trial court's finding that an unsecured loan of $472,889, owed to the plaintiff and the

defendant by a corporation with total assets of $69,598 and total liabilities of $789,169, of which $137,243 represented secured debt, constituted property that would otherwise have been subject to a claim of equitable distribution.

The trustee in bankruptcy, a neutral party, transferred Flower Farm's assets to Great Country Bank, a secured lien holder. There is no evidence that the trustee transferred to Great Country Bank any assets that were not encumbered by a valid lien. Nor is there any evidence that any of the remaining creditors received a disbursement from the bankruptcy proceeding. Great Country Bank then sold these assets for $30,000 to the plaintiff's mother in an arms-length transaction, and the trial court made no finding as to the actual value of these assets. There is no evidence in the record that the plaintiff, his mother or any of his relatives ever came into possession of the $472,889 receivable. Approximately eighteen months after the plaintiff's mother purchased the assets, and after she lent the business $40,000, she sold the assets for $60,000 to LDRK, Inc. There is no evidence in the record that the plaintiff or any of his relatives own or control any interest in LDRK, Inc., nor is there any evidence that the $472,889 receivable was transferred to LDRK, Inc. The $472,889 was an unsecured debt that was discharged in bankruptcy and as such it no longer existed. Since it did not exist, it could not be transferred to anyone. Because the record does not support the trial court's finding, it improperly considered the receivable as part of the marital estate.

Our conclusion in part I B and C that the trial court improperly considered as part of the marital estate the assets that the trustee in bankruptcy transferred to Great Country Bank and the $472,889 receivable, requires that we also vacate the financial orders. "The issues involving financial orders are entirely interwoven. 'The rendering of a judgment in a complicated

dissolution case is a carefully crafted mosaic, each element of which may be dependant on the other.' " *Sunbury* v. *Sunbury*, 210 Conn. 170, 175, 553 A.2d 612 (1989). It is impossible for us to ascertain the extent to which these nonassets affected the financial orders. See *Rubin* v. *Rubin*, 204 Conn. 224, 239, 527 A.2d 1184 (1987).

II

The plaintiff next claims that the trial court improperly determined that he and the cross complaint defendants fraudulently transferred assets from the marital estate when they terminated a testamentary trust in which the plaintiff held a remainder interest and transferred the trust assets to an inter vivos trust. Specifically, the plaintiff claims that the trial court (1) failed to apply the proper standard of proof, (2) improperly considered his remainder interest in the terminated trust as part of the marital estate because it constituted a mere expectancy and (3) failed to make a finding as to the actual value of his remainder interest in the terminated trust. Although we do not agree with the plaintiff's first and second claims, we agree with his third claim.

In articles IV and VI of his last will and testament, Frederick O. Dietter, the plaintiff's uncle and stepfather, established a testamentary trust. Frederick Dietter is deceased. Articles VI (A) and (B) of this testamentary trust state that the plaintiff's mother possesses a life estate in the income generated by the trust corpus; however, the trustee is authorized to invade the corpus whenever "necessary to provide adequately for her support, maintenance and medical care, and to maintain her according to the standard of living to which she was accustomed." Upon the death of the plaintiff's mother, article VI (C) (2) provides that "the trust shall terminate and the trust assets as then constituted, including any

undistributed income, shall be paid over and distributed as follows . . . One-third (1/3) thereof to my nephew, Robert E. Dietter, per stirpes and in fee."

On July 21, 1993, the beneficiaries terminated the Frederick O. Dietter Trust and transferred the trust assets to an inter vivos trust, the Elizabeth A. Dietter Family Trust. The plaintiff's mother was the grantor of this trust and Ronald Dietter and Theodore Dietter served as trustees. The trial court determined that, under the terms of this new trust, the plaintiff's "interest was conditioned on his not being married to Catherine Dietter."[6] The trial court found that the plaintiff and the cross complaint defendants, acting with the actual intent to defraud the defendant, terminated the Frederick O. Dietter Trust and transferred the trust assets to

---

[6] The Elizabeth A. Dietter Family Trust provided in relevant part:

"Third: Upon the Grantor's death, the Trustees shall divide the balance of the trust fund into as many equal parts as there are sons of the Grantor, namely Theodore A. Dietter, Robert E. Dietter and Ronald A. Dietter who survive the Grantor, and shall pay over free of trust one such equal part to each son of the Grantor who survives her and one such equal part to the issue of each such deceased child of the Grantor, in equal shares per stirpes, but subject to the provisions of Articles Fourth and Fifth hereof.

"Fourth: If the Grantor's son Robert survives her and is at the time of the Grantor's death lawfully married to Catherine E. Dietter, his share of the balance of the trust fund shall not be paid over and distributed to him but shall continue to be held by the Trustees as a separate trust fund to and for the uses following:

"A. The Trustees shall pay over to or use and apply further benefit of Robert such portion or portions of the income or principal of the trust fund as the Trustees in their absolute discretion shall deem to be necessary or advisable, and the decision of the Trustees as to the necessity or advisability of such payments and their amount shall be final and conclusive upon all persons interested. Any income not so paid over or used and applied may be accumulated and either added to principal or held as unexpended income to be used as such in later periods.

"B. When the Grantor's son Robert is no longer lawfully married to Catherine E. Dietter or upon his death, whichever first occurs, the trust shall terminate and the balance of the trust fund shall be paid over and distributed, free of trust, to the Grantor's son Robert, if he is then living, or of he is not then living, to his issue then living, in equal shares per stirpes but subject to the provisions of Article Fifth."

the Elizabeth A. Dietter Family Trust. It concluded that this transfer constituted a fraudulent transfer of the plaintiff's interest in the terminated trust from the marital estate.

## A

Relying on *Tessitore* v. *Tessitore*, supra, 31 Conn. App. 42–43, the plaintiff claims that the trial court applied the wrong standard of proof in evaluating this claim. We do not agree. The defendant neither claims, nor did the trial court conclude, that the burden of proof on this issue rests with the plaintiff because he owed the defendant a fiduciary duty in connection with the trust assets. The trial court therefore properly concluded that the defendant, who claims that this transaction constituted a fraudulent transfer, carries the burden of proof. See *Tyers* v. *Coma*, supra, 214 Conn. 11; *Tessitore* v. *Tessitore*, supra, 42. A fraudulent transfer must be proven by clear and convincing evidence and whether the trial court has applied a lesser standard of proof is reviewable on appeal. See *Tessitore* v. *Tessitore*, supra, 43.

In *Tessitore*, the trial court determined that the defendant had fraudulently transferred assets from the marital estate to his parents. Id., 42. We reversed the decision of the trial court and ordered a new trial because it was unclear from the memorandum of decision whether the trial court had applied the clear and convincing standard of proof. Id., 43. In contrast, in the present case, the memorandum of decision sets forth that the trial court applied the appropriate standard of proof. The trial court stated that "on the basis of all of the evidence as outlined above, the court finds by *clear and convincing evidence* that the plaintiff and his mother and his brother Ronald have together defrauded the defendant of her interest in the marital estate." (Emphasis added.) Additionally, based on a review of

the entire record, we conclude that the trial court properly determined that the defendant established by clear and convincing evidence that the termination of the Frederick O. Dietter Trust and the transfer of the trust assets to the Elizabeth A. Dietter Family Trust constituted a fraudulent transfer of assets from the marital estate.

B

The plaintiff next claims that, even assuming that the termination of the Frederick O. Dietter Trust and the transfer of the trust assets to the Elizabeth A. Dietter Family Trust constituted a fraudulent transfer, the trial court improperly considered his remainder interest in the terminated trust as part of the marital estate for the purpose of determining alimony. Specifically, he claims that his interest in this trust should not have been included in the martial estate because it constituted a mere expectancy. We do not agree.

At trial, relying on *Rubin* v. *Rubin,* supra, 204 Conn. 224, counsel for the plaintiff claimed that the plaintiff's interest in the trust was not admissible for purposes of determining the financial orders because it constituted a mere expectancy. The trial court overruled counsel's objection. In its memorandum of decision, the trial court concluded that because the plaintiff's interest in the Frederick O. Dietter Trust vested at the time of the testator's death, it could be considered as part of the marital estate for the purpose of determining financial orders.

"[E]vidence of a prospective inheritance is inadmissible in a dissolution of marriage proceeding." Id., 239. In *Rubin,* our Supreme Court held that a plaintiff's interest in a revocable inter vivos trust established by his mother and his interest as a residuary legatee under his mother's will were not admissible for consideration

in making a property distribution or in awarding alimony because, while the plaintiff's mother was still living, these interests constituted mere expectancies in that they may never be realized because the mother retained the power to revoke or reduce her son's contingent interest at any time. Id., 235–39; see also *Bartlett* v. *Bartlett,* supra, 220 Conn. 381. "[P]rospects for increase in the husband's property through gift or inheritance generally may not enter into the computation of alimony. Such sources of wealth are outside the husband's control and subject to the will of the donor or relative. . . . [W]e approve the view of those courts that have held evidence of a possible future inheritance to be inadmissible for the purpose of a property assignment or alimony award." (Citation omitted; internal quotation marks omitted.) *Rubin* v. *Rubin,* supra, 204 Conn. 237.

In contrast, in the present case, after an examination of the record we conclude that the trial court properly concluded that the plaintiff's remainder interest in the testamentary trust vested at the time of the testator's death. See *McFarland* v. *Chase Manhattan Bank, N.A.,* 32 Conn. Sup. 20, 46–51, 337 A.2d 1 (1973), aff'd, 168 Conn. 411, 362 A.2d 834 (1975). The trial court therefore properly considered the plaintiff's interest as part of the marital estate.

C

The plaintiff next claims that the trial court improperly considered his interest in the Frederick O. Dietter Trust as part of the marital estate for the purpose of determining alimony because there was no finding as to the actual value of his remainder interest in this trust. We agree.

In its memorandum of decision, the trial court found that the plaintiff and cross complaint defendants fraudulently transferred the assets of the Frederick O. Dietter

Trust to the Elizabeth A. Dietter Family Trust and that the corpus of the latter trust was currently valued at over $400,000. The trial court did not, however, make a finding as to the actual value of the plaintiff's vested remainder interest in the terminated trust, which interest is subject to the trustee's invasion of the corpus for the benefit of the holder of the life estate.

In *Eslami* v. *Eslami*, 218 Conn. 801, 806, 591 A.2d 411 (1991), the trial court did not consider the plaintiff's wife's vested interest in her father's estate, the assets of which she had not yet received, because the value of her interest could not be determined with certainty. Evidence at trial established that her brother had initiated a will contest that was still pending, and that the value of her interest depended upon the resolution of that litigation. Id. In affirming the judgment of the trial court, our Supreme Court stated that "[a]lthough the interest involved here had vested in the wife at the time of trial, the court could reasonably have concluded that uncertainty as to the amount she would eventually receive from her father's estate militated against consideration of that interest for the purpose of the financial awards." Id., 807. The court noted, however, that the plaintiff's interest in her father's estate was not wholly irrelevant to a fair financial arrangement between the parties and that modification of the alimony award might be appropriate when the value of this interest was ascertainable. Id., 807–808.

In the present case, the trial court made no finding as to the actual value of the plaintiff's remainder interest in the terminated trust. On remand, if the trial court is able to ascertain the value of the plaintiff's interest, it may consider this interest in fashioning the financial orders. If, on the other hand, the trial court cannot make a proper valuation of the plaintiff's interest and in its discretion it awards alimony, it may fashion the decree to allow for modification of the award when the

value of the interest becomes ascertainable. See id., 807–808; see also *Bartlett* v. *Bartlett, supra,* 220 Conn. 384.

## III

In his final claim, the plaintiff contends that the trial court improperly admitted into evidence a confidential attorney-client communication. We agree with the plaintiff.

Sometime prior to February 14, 1991, the plaintiff met with Attorneys Wayne A. Martino, Carl Gulliver and Andrew DiPietro to discuss the possibility of restructuring Flower Farm. Anthony Iagrosse, an accountant who worked for Flower Farm, was also present at this meeting. In a letter dated February 14, 1991, Martino discussed the legal ramifications of certain proposals that were discussed at this meeting.

At trial, the defendant sought to introduce this letter into evidence as circumstantial evidence of the plaintiff's intent to transfer assets fraudulently from the marital estate, and to impeach the plaintiff's testimony that he had never intended to use the company's reorganization as a method of fraudulently transferring assets. The plaintiff claimed that the letter was inadmissible because it constituted a confidential attorney-client communication. The trial court admitted the letter into evidence, concluding that the defendant's interest in disclosure outweighed the plaintiff's claim of privilege.

Communications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice. *State* v. *Gordon,* 197 Conn. 413, 423, 504 A.2d 1020 (1985); *Doyle* v. *Reeves,* 112 Conn. 521, 523, 152 A. 882 (1931). "A communication from an attorney to a client, in contrast to a communication *from* a client *to* an attorney, is normally not within the privilege, unless the attorney's statement directly or

indirectly reveals confidential information disclosed to the attorney by the client, or is 'inextricably linked' with the giving of legal advice. [*Ullmann* v. *State*, 230 Conn. 698, 714, 647 A.2d 324 (1994)]." (Emphasis in original.) C. Tait & J. LaPlante, Connecticut Evidence (Sup. 1999) § 12.5.2, p. 269. Because this letter indirectly reveals confidential information disclosed by the plaintiff at the meeting and it is inextricably linked to the giving of legal advice, it falls within the privilege.

Even were we to assume, as the defendant claims, that this letter contains circumstantial evidence of the plaintiff's fraudulent intent to transfer assets from the marital estate, "[t]o lose its privilege the communication must refer to the commission of a crime and not merely subject the client to a civil action for fraud. *Supplee* v. *Hall*, [75 Conn. 17, 22–23, 52 A. 407 (1902)]." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 12.5.8, p. 449. The trial court, therefore, improperly admitted the letter into evidence.

The defendant claims that there are two alternative grounds for affirming the decision of the trial court. The defendant claims that the trial court properly admitted the letter into evidence because (1) Iagrosse, who was not an attorney, was present at the meeting and (2) the plaintiff waived the privilege by disclosing the letter during discovery.[7] We disagree with the defendant's first claim and decline to review the second claim due to an inadequate record.

---

[7] At trial, the defendant raised both of these claims, but the court failed to reach either claim because it concluded that the defendant's interest in disclosure outweighed the plaintiff's claim of privilege. Although the defendant did not file a preliminary statement of issues alleging that these claims constituted alternative grounds for affirming the decision of the trial court; see Practice Book § 63-4 (a) (1) (A); we will review both of these claims because the plaintiff was not prejudiced thereby as he was afforded an opportunity to respond in his reply brief. *Chase* v. *State*, 45 Conn. App. 499, 501 n.3, 696 A.2d 1299 (1997); *In re Jennifer G.*, 29 Conn. App. 689, 692, 617 A.2d 921 (1992).

The defendant first claims that the letter is not subject to the attorney-client privilege because a third party, Iagrosse, was present at the meeting. "[S]tatements made in the presence of a third party are usually not privileged because there is then no reasonable expectation of confidentiality. . . . The presence of certain third parties, however, who are agents or employees of an attorney or client, and who are necessary to the consultation, will not destroy the confidential nature of the communications." (Citations omitted.) *State* v. *Gordon*, supra, 197 Conn. 424.

The record discloses that the plaintiff hired Iagrosse to provide accounting services to Flower Farm. Iagrosse was present at the meeting wherein the plaintiff and the three attorneys discussed the viability of restructuring Flower Farm. As Flower Farm's accountant, Iagrosse's presence at this meeting was necessary to assist the attorneys in understanding the financial information the plaintiff conveyed to the attorneys. Because Iagrosse's presence at this meeting was necessary for the plaintiff to obtain legal advice, his presence did not destroy the confidential nature of the communication.

The defendant next claims that the plaintiff waived the attorney-client privilege when plaintiff's counsel disclosed the letter in discovery. We decline to review this claim due to an inadequate record. At trial, counsel offered conflicting accounts as to the circumstances under which defense counsel obtained the letter,[8] and

---

[8] Counsel for the defendant claimed that he had acquired the letter from opposing counsel in the discovery process. Counsel for the plaintiff, however, was involved in the following colloquy:

"[Plaintiff's Counsel]: I don't know where it came from to be very frank with you, Your Honor. I can't imagine that through discovery we would have provided this. I don't know where it came from. But there are other—

"The Court: It is an interesting question.

"[Plaintiff's Counsel]: It certainly is. And there are other documents that have been produced at trial that I certainly didn't produce them in discovery. I don't know where they came from.

the trial court did not make a finding as to the manner in which defense counsel acquired the letter. In the absence of a finding concerning the manner in which this letter came into counsel's possession, we decline to review this claim.

The judgment is reversed only as to the financial orders and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

"The Court: Another lawyer preceded you?

"[Plaintiff's Counsel]: Yes, there was. I don't know what that lawyer may have done, but, yes, unfortunately there was another attorney involved in the case. So, I can't say with any kind of certainty that we have previously waived the objection."