[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR CHANGE OF PRINCIPAL RESIDENCE
The defendant has filed a motion for change of the principal residence of the two children of the parties: Brittany, who was born January 9, 1983, and Shane, who was born August 31, 1989. The marriage of the parties was dissolved on February 19, 1992 before the Honorable Joseph Steinberg in the regional family court. At that time, Judge Steinberg entered orders for joint legal custody, the plaintiff father to have primary physical custody and primary day-to-day responsibility and authority for the children's care. It is now eight and a half years post judgment and the children are now ages 12 1/2 and 10 1/2 respectively. Shane will be 11 the end of this month. Brittany has stated that she wants to live with her mother who resides in Chesterfield, Virginia and Shane has stated that he wants to live with his sister, but he does not wish to have to choose between living with his father or living with his mother.
The motion before the court was first filed in May, 1998 and bears docket entry number 165. It was thereafter amended and bears docket entry CT Page 9541 number 168. On October 26, 1999, Judge Cutsumpas found the motion to be stale and a new motion dated October 26, 1999 was thereafter filed and bears docket entry number 177. Since May, 1998, the parties have been striving for resolution of problems between them. In July, 1998 they reached agreement regarding telephone access. In November, 1999 they were before Judge Brennan on motions involving visitation and there have been other court appearances and two reports from the Family Relations Division.
 THE PARTIES
The plaintiff and defendant were married in Roanoke, Virginia on September 22, 1984. The plaintiff at the time of the dissolution and at present resides in Easton, Connecticut. He married his present wife, Patti, in February, 1994. He is self-employed as a remodeling contractor. The defendant married her current husband Richard Mustian in 1994 and they and his 14 year old daughter live in Chesterfield, Virginia. She has recently changed jobs and works as Quality Insurance Manager for Midas Mortgage Company.
 THE LAW
In reaching a decision in this case the court must be guided by the provisions of the statutes of the State of Connecticut. The applicable statute is § 46b-56 of the Connecticut General Statutes. That provision of the statutes provides in part as follows:
 "(b) in making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference. . . ."
The important language is that that states the court must be guided by the best interests of the child. And so it is in this case, the court must be guided by the best interests of Brittany and Shane. The provision of the statute goes on, however, to provide that the court shall give consideration to the wishes of the child if the child is of, sufficient age and capable of forming an intelligent preference. Shane at age ten, almost age 11, is not of sufficient age for his wishes to be given consideration. Brittany is at that in-between age when she may be or she may not be. Her counsel has argued that she is. The additional language "capable of forming an intelligent preference" adds an additional requirement. CT Page 9542
The evidence has demonstrated that both children have thrived in their present environment. Brittany has done exceptionally well in school, has numerous friends, enjoys school, has many extracurricular activities, the most important of which is cheerleading, an excellent relationship with her cheerleading coach and a loving relationship with her Dad and her stepmother, Patti Butler, even though she voices something less. Brittany and Patti Butler have spent positive time together, and Patti Butler has taken an active part in Brittany's school work, teacher conferences and homework. Shane, too, has progressed in school, has numerous friends, enjoys school and also is an outstanding athlete. He excels in soccer.
As previously noted, Brittany has expressed her desire to live with her mother in Virginia. Three or four years ago, upon her return from a visitation with her mother, she did state to her father that she thought she would like to try living with her Mom in Virginia. Her articulation of this wish has been more vocal since that time. However, one wonders whether she has really thought out what would be involved in such a change. There would, of course, be a change in schools, a change in school mates, a change in all sports and particularly a change in cheerleading. There is no question that there would be what has been described as a "dramatic and traumatic change."
The court finds that Brittany, at age twelve and one half, has not considered the full impact upon her life. The court finds the reason she has not is that she is not capable of forming an intelligent preference at this time. The time will come when she will be capable of forming an intelligent preference. The letter she has written for her attorney to read at the conclusion of the evidence demonstrates an inability to really think things through right now. That letter, while well written, was mean, hateful and not that of a thinking young adult. Her actions and conduct belie what was expressed in her letter. One such example is the picture of Brittany and Patti walking hand in hand in plaintiff's exhibit C. The recommendation of both the Family Relations officer and the children's guardian ad litem is that the principal residence of both children remain wholly with their father.
For there to be a modification of custody, the court must find there has been a material change in circumstances since the court's last consideration of this issue. Stewart v. Stewart, 177 Conn. 401, 407-408
(1979); Brubeck v. Brubeck, 42 Conn. App. 583, 585 (1996). In view of the progress the children continue to make in their present environment, the court does not find such a material change in circumstances. The ultimate test is the best interests of the child. Brubeck v. Brubeck, supra; Kellyv. Kelly, 54 Conn. App. 500 (1999). The court finds that the best interests of both of these children is to remain living with the father. CT Page 9543
The children are caught in the middle. They must not be placed in a position where they have to choose. They love both their parents very much. They wish to spend more time with their mother in Connecticut. They wish their mother to participate in their enjoyment of their sports and their activities. Both children are superb athletes and they wish to have their mother be a part of this part of their lives. They both are at that age when they will be having many activities that they will not want to miss and some of which they should not miss in their best interest. Their father as the custodial parent is the one in the best position to make the judgment calls on what is in their best interest. That part of the judgment which provides that the plaintiff's decision shall be final in the event the parties are unable to reach agreement shall remain as originally ordered by Judge Steinberg.
 VISITATION
The court finds that it is in the children's best interest to modify the previous orders of the court with respect to access or visitation, school vacations, summer vacation, phone access and other matters effecting the children. Most of these orders were requested by counsel for the children and will result in the mother's greater contact with Brittany and Shane.
CHILDREN'S SCHOOL AND ACTIVITIES:
1. The plaintiff shall, as soon as he receives same, provide the defendant with names, addresses and phone numbers of schools, names of teachers, schedules, and any other school related information.
2. The plaintiff shall, as soon as he receives it, provide the defendant with schedules, contact person and phone number for each team, sport or activity in which the children are involved.
WEEKEND VISITATION
1. The defendant may visit with the children in Connecticut on any weekends she may choose except for the plaintiff's holidays and vacation time with the children. The defendant shall give the plaintiff four weeks' notice of her intention to exercise such visitation. The defendant shall take the children to any sports, cheerleading or other activities in which they are involved during such weekends. Such weekend visitation shall be from after school Friday afternoon to whatever time on Sunday the defendant may choose.
2. The children from time to time participate in special CT Page 9544 events/activities, sports-related and otherwise, such as but not limited to, soccer tournaments and cheerleading competitions. When these special events/activities (not intended to mean routine activities) occur during the defendant's weekend visitation, she will either exercise the visitation in Connecticut or the state where the special event/outing is taking place. The defendant will be responsible for transportation. If the special event/activity is in a state other than Connecticut, the plaintiff and the defendant shall share equally the travel and hotel expenses of the children and shall have equal access to the children during such time, except the children shall spend overnight with the defendant.
3. The defendant shall have the following long weekends from Friday after school to whatever time the defendant chooses on Monday:
a. Martin Luther King holiday weekend;
 b. Easter weekend beginning after school on Thursday to whatever time on Easter Sunday the defendant may choose;
 c. Mother's Day weekend beginning after school on Thursday to whatever time on Mother's Day the defendant may choose;
d. Memorial Day weekend;
e. Labor Day weekend; and,
f. Columbus Day weekend.
VACATIONS
1. The defendant shall have the children with her beginning the first day after the end of the school year in June and ending August 1 of each year. The children shall be with their father from August 1 to the beginning of the school year except for the Labor Day weekend commencing the Friday before.
2. The plaintiff shall have the children with him for the February school vacation and the defendant shall have the children with her for the April school vacation. If there is only one school vacation in the second half of the school year, the defendant shall have the children for that vacation.
3. The children shall divide their time with each parent equally for the Christmas vacation, alternating by year with which parent they will spend Christmas Eve and Christmas Day. In 2000, they will spend from CT Page 9545 the end of school, December 23 through December 28, with the defendant and from December 28 through January 2 with the plaintiff.
4. The children shall spend Thanksgiving week with the defendant from the Saturday before Thanksgiving to the Sunday after Thanksgiving, as long as they are both doing satisfactorily in school and neither is failing any subject. If in any year the children are not doing satisfactorily in school and are failing any subject, Thanksgiving will be with the plaintiff that year.
5. The defendant shall spend Memorial Day weekend, Labor Day Weekend and Columbus Day weekend with the children in the State of Connecticut or, if the children have a tournament or activity in another state that weekend, then with the children in that state. The provisions of paragraph 2 under Weekend Visitation shall apply.
PHONE CALLS
1. The provisions of the court order of July 23, 1998 shall apply; that is, that the defendant shall have telephone access to the children on Saturday and Sunday at 9:00 a.m. (the court has changed the time to 9:00 a.m. from 8:00 a.m.) and Tuesday and Thursday evenings between 8:15 p.m. and 9:00 p.m. All other provisions of the parties' agreement and court order of July 23, 1998 shall continue in full force and effect.
The Family Relations officer and the guardian ad litem have recommended counseling. The psychologist or counselor shall be recommended by Attorney Amendola and Attorney Binford. The parents shall meet with that psychologist or counselor, as the case may be, and approve. In the event the parents are unable to agree upon a psychiatrist or counselor, Attorneys Amendola and Binford shall recommend another psychologist or counselor, and the parents shall meet and approve. If after meeting with three psychologists or counselors the parties are unable to agree on such psychologist or counselor, they shall return to court for further orders in this regard.
Attorney Amendola and Attorney Binford shall meet with the children to advise them of the court's decision. As has been previously ordered, the parties are not to discuss with the children any part of the evidence or the proceedings before this court. To the extent the parties can control it, no one else who may have heard any of the evidence is to discuss any part of the evidence or the court proceedings with the children. Finally, all prior court orders not in contravention of these orders shall remain in full force and effect. CT Page 9546
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE