In re Thomas J. RICHARDSON,
Debtor.

Michael J. Daly, Trustee, Plaintiff,

v.

Anne V. Richardson, Defendant.

Bankruptcy No. 95–31229.
Adversary No. 95–3075.

United States Bankruptcy Court,
D. Connecticut.

Oct. 23, 2001.

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, CT, for Plaintiff–Trustee.

Ira B. Grudberg, Jacobs, Grudberg, Belt & Dow, New Haven, CT, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S COMPLAINT FOR AVOIDANCE OF TRANSFER

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

The captioned adversary proceeding presents another chapter in the sordid history of the financial dealings of Attorneys John A. Carrozzella (hereafter, "Carrozzella") and Thomas J. Richardson (hereafter, "Richardson"). These Findings of Fact and Conclusions of Law assume familiarity with a pattern of fraud perpetrated upon scores of Carrozzella's and Richardson's clients, and others, over a period spanning two decades. *See e.g., Daly v. Biafore (In re Carrozzella & Richardson),* 237 B.R. 536 (Bankr.D.Conn. 1999).[1] The present proceeding, however, does not involve those acts of fraud directly, but rather, raises the relatively straight-forward question of the voidability under state fraudulent conveyance law of a residential transfer from Richardson to his wife, the present Defendant.

As set forth in more detail hereafter, a judgment shall enter in favor of the Plain-tiff–Trustee declaring the avoidance of the subject transfer, and ordering a recovery of the transferred property interest.

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(H).

### III. FINDINGS OF FACT

The Court's findings of fact are derived from the evidence adduced at trial, as well as the Court's independent examination of the official record of the instant bankruptcy case and adversary proceeding.

A. Richardson and the Defendant were married continuously from 1967 through at least the date of trial of this proceeding. In or about 1978 they purchased improved residential real property known as and numbered 46 Hintz Drive, Wallingford, Connecticut (hereafter, the "Residence"). Prior to 1991, title to the Residence was held in the names of both Richardson and the Defendant.[2]

B. On November 12, 1991, Richardson quit-claimed his interest in the Residence (hereafter, the "Transferred Interest")[3] to

1. Beginning sometime in the late 1980's, Richardson participated in a criminal enterprise possessing many of the attributes of a "Ponzi" scheme—in which funds placed with an individual or other entity by investors/depositors are secretly and illicitly utilized to pay returns and repay principal to earlier depositors.

2. Presumably, title was held by the Defendant and Richardson in equal percentage interests

as joint tenants with the right of survivorship, although no evidence on this question was presented to the Court.

3. A determination of the precise nature and extent of this interest is unnecessary given the Court's disposition of this adversary proceeding.

the Defendant for no tangible consideration (hereafter, the "Transfer"). On November 14, 1991, the deed evidencing the Transfer was recorded on the Land Records of Wallingford, Connecticut, in Volume 717 at Page 464.

C. On July 19, 1995 (hereafter, the "Petition Date"), an involuntary petition was filed in this Court against Richardson, *inter alia,*[4] seeking relief under Chapter 7 of the Bankruptcy Code. On August 21, 1995, an Order for Relief entered upon the Petition, and thereafter the Plaintiff, Michael J. Daly (heretofore and hereafter, the "Plaintiff" or "Trustee") was appointed as trustee of Richardson's Chapter 7 bankruptcy estate.

### IV. CONCLUSIONS OF LAW [5]

A. The Trustee claims that the Transfer was "fraudulent" under the standards of Sections 52–552e and 552f of the Connecticut General Statutes, and is therefore avoidable by him pursuant to C.G.S. § 52–552h(a).

B. Connecticut General Statutes Section 52–552e(a)(1) provides in relevant part as follows:

A transfer made... by a debtor is fraudulent as to a creditor, *if the creditor's claim arose before the transfer was made* and... if the debtor made the transfer... (1) with *actual intent* to hinder, delay or defraud any creditor of the debtor....

(emphasis supplied).

C. Connecticut General Statutes Section 52–552e(a)(2) provides in relevant part as follows:

A transfer made... by a debtor is fraudulent as to a creditor, *if the credi-*

*tor's claim arose before the transfer was made* and... if the debtor made the transfer... (2) without receiving a *reasonably equivalent value* in exchange for the transfer... and the debtor (A) was *engaged* or was about to engage *in a business* or a transaction *for which the remaining assets of the debtor were unreasonably small in relation to the business* or transaction, or (B) intended to incur, or believed or *reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.*

(emphasis supplied).

D. Connecticut General Statutes Section 52–552f(a) provides in relevant part as follows:

A transfer made... by a debtor is fraudulent as to a *creditor whose claim arose before the transfer was made* and... if the debtor made the transfer... without receiving a *reasonably equivalent value* in exchange for the transfer... and the debtor was *insolvent* at that time or the debtor became insolvent as a result of the transfer....

(emphasis supplied).

E. As is plain from the language of Sections 52–552e and 52–552f, transfer avoidance thereunder is available to the Trustee only if he has the status and rights of a creditor whose claim "arose before the transfer was made".

■ F. The Trustee's rights and standing as a "creditor" are found in Bankruptcy Code Section 544, which, at the time of the filing of the Petition, provided in relevant part, at subsection (b), as follows:

---

4. An involuntary bankruptcy petition was also filed against Carrozzella and a partnership entity known as Carrozzella & Richardson (hereafter, the "Partnership").

5. For purposes of clarity, and despite its heading, this section contains findings of fact and/or rulings on mixed questions of law and fact, in addition to pure conclusions of law.

The trustee may avoid any transfer of an interest of the debtor in property... by the debtor that is *voidable under applicable law by a creditor holding an unsecured claim* that is allowable under section 502 of this title....

11 U.S.C. § 544(b) (1995) (emphasis supplied). Consequently, under Section 544(b) the Trustee may exercise only the state-law rights of an actual, bona fide unsecured creditor in existence on the Petition Date (hereafter, "Actual Creditor(s)").

■ G. Given the temporal limitations of Sections 52–552e and 52–552f, the Trustee has no "standing" to bring this adversary proceeding unless the record reveals that there was at least one Actual Creditor whose claim arose *prior* to the Transfer.[6] *See, e.g., Matter of Leonard,* 125 F.3d 543, 544–545 (7th Cir.1997); *Sender v. Simon,* 84 F.3d 1299, 1304 (10th Cir.1996).

H. The record of this bankruptcy case reveals that there were multiple Actual Creditors whose claims arose prior to November 14, 1991—the date of the Transfer.[7] The Court takes judicial notice[8] of the several Proofs of Claim on file in this bankruptcy case which assert claims "incurred" prior to November 14, 1991 (hereafter, the "Qualifying Claims").[9]

I. Proofs of Claim on file are "deemed allowed, unless a party in interest... objects." 11 U.S.C. § 502(a) (1995). Because no objections to the Qualifying Claims have yet been filed, they are deemed allowed, and therefore are "allow-able" under Code Section 502, as is required by Section 544(b).

■ J. Under Connecticut law a creditor, and thus the Trustee, has the burden of proving the elements of Section 52–552e and/or 52–552f by clear and convincing evidence. *See, e.g., Dietter v. Dietter,* 54 Conn.App. 481, 737 A.2d 926 (1999), *cert. denied,* 252 Conn. 906, 743 A.2d 617 (1999).

■ K. The record of this proceeding is insufficient for the Court to find or conclude, under a "clear and convincing" standard, that the Transfer was made by Richardson with "actual intent to hinder, delay or defraud" any of his creditors, as required by Section 52–552e(a)(1). The only direct evidence of Richardson's actual intent is his Affidavit (Exhibit 1) which appears to offer at least two explanations or motivations for the Transfer. First, Richardson claims to have believed at the time of the Transfer that his partnership investments with Carrozzella—in which his wife was not a partner—were worth "a very substantial amount of money". That belief, coupled with concerns for fairness and estate planning, allegedly led Richardson to place the Residence solely in the Defendant's name. At the same time, Richardson acknowledges that his investments were not very liquid, and that he expected Carrozzella to approach him to borrow against the Residence and contribute the proceeds to the Partnership. He then admits that he feared he would be too weak to say "No" to Carrozzella, but was confident that if the Defendant solely owned the Residence, she would stand firm against such a request. While Exhib-

---

**6.** Because Code Section 544(a) confers upon the Trustee the rights, *inter alia,* of a hypothetical creditor whose claim arose on the Petition Date, that subsection is not supportive of his standing under Sections 52–552e and 552f.

**7.** Under Connecticut fraudulent conveyance law a real property transfer is "made" upon recordation of the subject deed. C.G.S. § 52–552g(1)(A), *see* C.G.S. § 47–10.

**8.** *See* Fed.R.Evid. 201 (1997).

**9.** *E.g.,* Claim Nos. 3, 5, 9, 13, 21, 23, 25, 38.

it 1 lacks a solid basis of trustworthiness—both because of its source [10] and its substance—the Trustee has furnished the Court with less than "clear and convincing" circumstantial evidence of actual, improper intent vis-a-vis Richardson's creditors.

 L. Richardson made the Transfer without receiving "reasonably equivalent value" within the intendment of Sections 52–552e(a)(2) and 52–552f. In fact, the record of this proceeding leads the Court to find and conclude that *no* value was given by the Defendant in exchange for the Transfer.[11] "Value" is given in exchange for a transfer only if "property is transferred or an antecedent debt is... satisfied". C.G.S. § 52–552d(a). The Defendant supplied evidence of neither. The motivations for the Transfer, as asserted in Richardson's Affidavit, simply do not identify or quantify any value flowing from the Defendant to Richardson *in exchange for* the Transfer.

M. At the time of the Transfer, Richardson (i) was insolvent, or was rendered insolvent as a result of the Transfer; (ii) was engaged, or was about to engage in a business or transaction(s) for which his remaining assets were unreasonably small in relation to the business or transaction(s); and (iii) believed, or reasonably should have believed, that he would incur debts beyond his ability to pay as they became due.

N. The Transfer is avoidable under C.G.S. § 52–552h(a) by virtue of the Trustee's establishment of a "fraudulent" transfer within the scope of C.G.S. §§ 52–552e(a)(2) and 552f(a).

O. Having obtained avoidance of the Transfer, the Trustee may recover the Transferred Interest from the Defendant as the "initial transferee". 11 U.S.C. § 550(a).

## V. CONCLUSION

For the foregoing reasons, judgment shall enter in favor of the Plaintiff avoiding the Transfer, and ordering the conveyance of the Transferred Interest to the Trustee.

---

**10.** In or about 1996, Richardson was convicted of a crime involving dishonesty and punishable by imprisonment in excess of one year. *See* Fed.R.Evid. 609(a) (1997).

**11.** The value flowing from Richardson to the Defendant from the Transfer was at least $27,500.00—Richardson's share of the equity in the Residence. The Defendant's own testimony established that at the time of Transfer the Residence had an approximate fair market value of $170,000.00, and was encumbered only by two mortgages securing original loan balances not exceeding $115,000.00.