******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.
******************************************************

# GAIL REINKE *v.* WALTER SING
## (AC 36210)

Keller, Bright and Beach, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the judgment of the trial court
opening the dissolution judgment and issuing certain financial orders.
After this court reversed the trial court's judgment opening and modi-
fying the dissolution judgment, the plaintiff, on the granting of certifica-
tion, appealed to our Supreme Court, which reversed this court's
judgment and remanded the case to this court with direction to consider
the merits of the plaintiff's claims on appeal. On remand, *held*:

1. The plaintiff could not prevail on her claim that the trial court erred by
   failing to find that the defendant committed fraud when he submitted
   inaccurate financial affidavits to the court at the time of the original
   dissolution judgment: although parties in a dissolution action have a
   fiduciary-like duty to fully and frankly disclose their financial informa-
   tion, the plaintiff's claim that once an underreporting of income and
   assets was proven, the burden shifted to the defendant to prove fair
   dealing by clear and convincing evidence was unavailing, as the plaintiff
   did not ask the court to require the defendant to prove fair dealing by
   clear and convincing evidence, nor did she allege or argue that the
   defendant was in a fiduciary relationship with her or that he owed her
   the duties that are owed to a beneficiary of a fiduciary relationship, she
   failed to provide any authority to support her burden shifting analysis,
   and our Supreme Court previously has rejected such a burden shifting
   argument; moreover, the trial court's finding that the plaintiff failed to
   prove fraud was not clearly erroneous and was supported by sufficient
   evidence in the record, including extensive testimony by the defendant
   about the information he had provided on his financial affidavits in
   which he attempted to demonstrate that his disclosures were made in
   good faith, even if some of them were incorrect, which supported a
   finding that the underreporting of income and assets that occurred was
   not necessarily the result of fraud.

2. The trial court's alimony award did not reflect an abuse of discretion:
   nothing in the record suggested that the court, which had found that
   an underreporting of income by the defendant in fact had occurred but
   did not find that the defendant's failure to fully disclose his assets and
   income amounted to fraud, acted arbitrarily in rendering its new financial
   orders, as the court stated that it considered the evidence and relevant
   statutes, including the child support guidelines, it provided a remedy
   to the plaintiff by altering the financial orders of the original dissolution
   judgment in a variety of ways, including setting a new alimony award that
   increased the plaintiff's award by 11 percent and created a significant
   arrearage in her favor, and it endeavored to craft new financial orders
   that were consistent with the principles that governed the original
   decree; moreover, the trial court, having found no wrongdoing by the
   defendant and having expressly found that the plaintiff did not sustain
   her burden of proving that the defendant acted fraudulently, was not
   obligated to penalize the defendant by awarding the plaintiff greater
   alimony or asset awards.

3. The plaintiff's claim that the trial court erred with respect to its distribution
   of five marital assets that came to light after the court opened the
   judgment was unavailing; that court's division of the assets at issue did
   not appear to have been arbitrarily made or the product of mistake,
   and was expressly based on the parties' intent to divide martial assets
   evenly, as reflected in their original stipulation, and in light of the court's
   finding that the plaintiff did not prove that the defendant acted in a
   fraudulent manner, her claim that the court unfairly rewarded the defen-
   dant for wrongful conduct with respect to his financial affidavit necessar-
   ily failed.

4. The plaintiff failed to demonstrate that the trial court's award of attorney's
   fees reflected an abuse of discretion; even if that court, in making its

original award of attorney's fees, overlooked a certain affidavit of the plaintiff's attorney, the plaintiff failed to demonstrate that reversible error existed, as the court never stated that it would not consider the subject affidavit, nor did it improperly refuse to consider awarding fees allegedly incurred during a substantial portion of the litigation, the court's decision showed that it considered the reasonableness of the fees generally but focused on the fact that the affidavits submitted by the plaintiff's attorneys set forth an amount of fees that was disproportionately high when compared to the results achieved, and the plaintiff failed to provide any authority for her claim that, in light of the court's finding that the defendant had failed to disclose fully his income and assets at the time of the original dissolution judgment, it was obligated to award the plaintiff all of the fees she had incurred.

5. The plaintiff could not prevail on her claim that the trial court abused its discretion by failing in its financial orders to promote full and frank disclosure in financial affidavits and by failing to address adequately the defendant's omission of substantial income and assets from his financial affidavits; that court, having found discrepancies in the defendant's reporting of his income and assets, provided the plaintiff with a proper remedy for the defendant's failure to disclose assets and income fully by altering the financial orders of the original dissolution judgment in a variety of ways, and given that the court expressly found that the plaintiff had not proven fraud, it was not obligated to provide the plaintiff with any more favorable financial orders.

Argued September 11—officially released December 18, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Dennis F. Harrigan*, judge trial referee; judgment dissolving the marriage and granting certain other relief in accordance with the parties' stipulation; thereafter, the court, *Shay, J.*, granted the plaintiff's motion to open the judgment and issued certain orders; subsequently, the court, *Shay, J.*, issued a corrected memorandum of decision, and the plaintiff appealed to this court; thereafter, the court, *Shay, J.*, issued an articulation of its decision; subsequently, this court reversed the trial court's judgment and remanded the case with direction to deny the plaintiff's motion to open; thereafter, the plaintiff filed a petition for certification to appeal with our Supreme Court, which granted the petition and remanded the matter to this court to consider the plaintiff's claims. *Affirmed.*

*Eric M. Higgins*, for the appellant (plaintiff).

*Reine C. Boyer*, for the appellee (defendant).

*Opinion*

KELLER, J. This appeal returns to the Appellate Court on remand from our Supreme Court for resolution of the claims raised by the plaintiff, Gail Reinke. *Reinke* v. *Sing*, 328 Conn. 376, 179 A.3d 769 (2018).[1] The plaintiff appeals from the judgment of the trial court after it reissued several financial orders that were part of an original judgment that dissolved her marriage to the defendant, Walter Sing. The plaintiff claims that the court erred (1) by failing to find that the defendant committed fraud when he submitted inaccurate financial affidavits to the court at the time of the original dissolution judgment, (2) with respect to its alimony award, (3) with respect to its distribution of property, (4) with respect to its award of attorney's fees, and (5) by failing in its financial orders to promote full and frank disclosure in financial affidavits and by failing to address adequately the defendant's omission of substantial income and assets from the financial affidavits that he filed at the time of the original dissolution judgment. We affirm the judgment of the trial court.

Several facts are not in dispute. The parties were married in 1989. On October, 2, 2007, their marriage was dissolved by the trial court, *Hon. Dennis F. Harrigan*, judge trial referee. At the time of this original dissolution judgment in 2007, the plaintiff was forty-seven years of age and the defendant was fifty-six years of age. The plaintiff, who holds a bachelor's degree, was a homemaker during the marriage, but occasionally worked in a part-time capacity. The defendant, who holds a degree in mathematics, worked steadily throughout the marriage and, at the time of the dissolution proceedings, was a self-employed information technology consultant. There were two children of the marriage. At the time of the original dissolution, the parties' son was seventeen years of age and their daughter was fourteen years of age. At the time of the subsequent judgment at issue in the present appeal, both children had reached the age of majority.

The parties' written "Stipulation for Judgment" was incorporated by reference into the original judgment of dissolution. Among the financial provisions in the original decree, the defendant was ordered to pay the plaintiff $3,333.33 in unallocated alimony and child support each month, beginning on October 1, 2007, subject to de novo review at the request of either party beginning on October 1, 2016. Generally, the stipulation incorporated in the judgment reflected the parties' intent to divide their marital assets equally.

On May 4, 2010, the plaintiff filed a motion to open the judgment of dissolution on the ground that the defendant engaged in fraud during the original dissolution proceedings by failing to disclose in his financial affidavit information concerning the extent of his

assets. According to the plaintiff, this resulted in an undervaluation of the defendant's assets by approximately $160,000. The plaintiff asked for the case to be opened "for the purpose of complete discovery and an equitable distribution of the parties' entire marital estate."

On September 28, 2010, by agreement of the parties, the court, *Shay, J.*, opened the original judgment of dissolution for purposes of reassessing the financial orders. In opening the judgment, the court did not make any finding with respect to fraud, nor did the parties stipulate that fraud had occurred. Thereafter, the parties engaged in extensive discovery for over two and one half years.

On August 23, 2013, following a six day trial, the court found that, at the time of the original dissolution judgment in 2007, the defendant had underreported his assets. In light of the underreporting that had occurred, the court entered numerous financial orders that, in several material ways, differed from those in the original judgment. In its memorandum of decision, the court stated in relevant part: "[T]he evidence supports a finding that there are substantial discrepancies between the [defendant's] income as first reported at the time of the original hearing and what actually should have been reported. In fact, the stipulation of the parties was based upon the assumption that the [defendant] had gross income of $100,000, when, in fact, he was earning twice that. . . . The [defendant] has filed multiple financial affidavits over the course of the case, thus presenting the court with the proverbial 'moving target.' In calculating the [defendant's] net income, the court has not factored in business expenses, since the [defendant] offered no credible evidence as to the amount of [the] same. The court has, however, taken into consideration state and federal taxes, and his health insurance premiums. Accordingly, the court calculates his net weekly income as $2061. . . .

"As to the marital estate, while the differences are not as dramatic, nevertheless, they exist. A comparison to investment accounts shows an underreporting of $16,574 . . . or an 8.5 percent difference. The same comparison with regard to retirement accounts yields a more dramatic difference of $63,655 . . . or 62 percent. In addition, no life insurance was shown on the corrected financial affidavit, where $250,000 term insurance insuring the [defendant's] life was disclosed on the original financial affidavit, and less debt is reported on the corrected affidavit than on the original. Finally, the [defendant] failed to disclose to the [plaintiff] that he anticipated approximately $100,000 in income tax refunds, which he ultimately did receive and put to his own use.

"The [plaintiff] testified at length about abusive behavior by the [defendant], physical and mental,

throughout the course of the marriage. There is some evidence to support her claims, however, much of it is anecdotal. The family was further stressed by problems concerning their son . . . .

"A substantial number of the terms of the stipulation for judgment have already been satisfied in part or in full, including investment accounts, retirement accounts, automobiles, and other personal property. On the other hand, in addition to the omission of certain assets, the evidence supports a finding that the [plaintiff's] one-third interest in the condominium in Jersey City, New Jersey, that is shared with the [defendant's] brother, and which was to be transferred to the [defendant] in the settlement in return for a $22,000 payment to the [plaintiff], was undervalued. The evidence supports a valuation of her interest as $58,833. The [defendant] gave the [plaintiff] a check for $22,000, but, to date, she has failed to deliver a deed of her interest to him.

"The principal remaining undivided marital asset is the family home . . . currently occupied by the [defendant], which the parties have stipulated [has] a fair market value of $1,565,000, against which there is combined mortgage debt of approximately $650,000. The house is currently listed for sale."

In light of all of the circumstances, the court found that the parties' 2007 stipulation, which had been incorporated by reference in the original decree, was fair and equitable and that, apart from the areas in which it would be modified by the court, it was incorporated into the new decree. The court stated that, in crafting the final decree, it would take into account the partial division of the marital estate that already had occurred pursuant to the parties' stipulation. The court found that there were no exceptional intervening circumstances and, thus, it was appropriate to base its division of the estate on its value as of the date of the original judgment of dissolution.

Among the most significant ways in which the court modified the original decree,[2] it altered the defendant's alimony obligation by ordering him to pay the plaintiff $4425 in alimony monthly beginning on October 1, 2007, until May 31, 2010; $4000 in alimony monthly beginning on June 1, 2010, until May 31, 2011; and $3500 in alimony monthly beginning on June 1, 2011, until May 31, 2016. The court specified that its award was nonmodifiable with respect to its term and that the arrearage created by its new order was to be paid to the plaintiff at the rate of $500 per month until paid in full. The court did not modify the defendant's child support obligation. As the parties agree, the court equally divided between them those assets that it found had been undervalued or not disclosed previously by the defendant. As an award of attorney's fees in connection with this case, the court ordered the defendant to pay the plaintiff

herself $20,000, her current counsel $10,000, and her former counsel $10,000. This resulted in an award of attorney's fees totaling $40,000.

Thereafter, the plaintiff appealed. In 2015, when this appeal was previously before this court, the trial court was ordered, in relevant part, to articulate "whether it found that there was no fraud or whether it simply was not making an express finding regarding fraud. If the latter, the court is ordered further to articulate whether it found that there had been fraud as to the first judgment of dissolution."[3] In its articulation of July 29, 2015, the trial court stated in relevant part that it had granted the plaintiff's motion to open the judgment of dissolution "by agreement of the parties" and "[a]t that time, [it] made no express finding of fraud. Although the [defendant] did not voluntarily concede any fraudulent dealings on his part, by agreeing to open the judgment, he impliedly conceded the fact that the [plaintiff's] allegations would, *if proven*, be a sufficient basis for opening the judgment of dissolution. . . . Moreover, the [plaintiff] was never precluded from raising the issue of fault at the time of the new hearing, which is, in fact, just what she did. . . .

"While the court found that the [defendant] had originally failed to fully disclose some of his assets and understated his income, it made neither an express finding that his failure to do so amounted to fraud, nor, for that matter, that his behavior did not amount to fraud. In short, under all the circumstances, the [plaintiff] failed to meet her burden to establish fraud to the satisfaction of the court by clear and convincing evidence. . . . Moreover, the court believes that a finding that fraud was not proven could be fairly implied from a reading of the decision as a whole, in particular, relative to its other specific findings and as to the relief granted." (Citations omitted; emphasis in original; internal quotation marks omitted.)[4]

This appeal followed. Additional facts will be set forth as necessary in our analysis of the plaintiff's claims.

I

First, we address the plaintiff's claim that the court erroneously failed to find that the defendant committed fraud when he submitted inaccurate financial affidavits to the court at the time of the original dissolution judgment.[5] We disagree.

A

In the first subpart of the present claim, the plaintiff asserts that the court improperly required her to bear the burden of proving that the defendant had engaged in fraud. She argues that, in light of the defendant's fiduciary-like obligation to make full and frank disclosures on his financial affidavits, the court should have required the defendant to prove fair dealing by clear and convincing evidence.

"When a party contests the burden of proof applied by the court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Rollar Construction & Demolition, Inc.* v. *Granite Rock Associates, LLC*, 94 Conn. App. 125, 133, 891 A.2d 133 (2006).

To provide necessary context for the plaintiff's argument, we set forth some basic legal principles concerning breach of fiduciary duty actions. "Once a [fiduciary] relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or clear, convincing and unequivocal evidence. . . . Proof of a fiduciary relationship, therefore, generally imposes a twofold burden on the fiduciary. First, the burden of proof shifts to the fiduciary; and second, the standard of proof is clear and convincing evidence." (Internal quotation marks omitted.) *Papallo* v. *Lefebvre*, 172 Conn. App. 746, 754, 161 A.3d 603 (2017); see also *Chioffi* v. *Martin*, 181 Conn. App. 111, 137, 186 A.3d 15 (2018); *Iacurci* v. *Sax*, 139 Conn. App. 386, 394 n.2, 57 A.3d 736 (2012) ("in cases involving claims of fraud, self-dealing or conflict of interest, a fiduciary bears the burden of proving fair dealing by clear and convincing evidence"), aff'd, 313 Conn. 786, 99 A.3d 1145 (2014).

The plaintiff does not direct our attention to any portion of the record in which she explicitly asked the court to require the defendant to prove fair dealing by clear and convincing evidence or objected on the ground that the court incorrectly had allocated the burden of proof to her. Nor does the plaintiff draw our attention to any portion of the record in which she explicitly argued before the court that the defendant, consistently identified throughout the proceedings as her spouse, was in a fiduciary relationship with her. Our careful review of the relevant pleadings reflects that the plaintiff did not plead that the defendant was a fiduciary or that he owed her the duties that are owed to a beneficiary of a fiduciary relationship.

At trial, the plaintiff, relying on *Billington* v. *Billington*, 220 Conn. 212, 595 A.2d 1377 (1991), stressed that the defendant had an obligation to disclose fully his income and assets in the financial affidavits that he submitted to the court at the time of the original dissolution judgment in 2007, that he failed to do so, and that the plaintiff was entitled to recourse for his failure in this regard. At the conclusion of the trial, the plaintiff's counsel argued that the marital relationship was "quasi fiduciary in nature."

In parts II, III, IV, and V of this opinion, we address the plaintiff's claims that some of the court's financial

orders reflected an abuse of discretion. Consistent with the arguments advanced at trial, in those claims, the plaintiff relies on *Billington*, in which our Supreme Court abandoned the requirement that a party seeking to open a dissolution judgment on the basis of fraud must demonstrate that it exercised diligence in the original dissolution action in order to discover and expose the fraud. *Billington* v. *Billington*, supra, 220 Conn. 218. The court's discussion in *Billington* illuminates the obligation borne by both parties in dissolution actions to provide the court with an accurate financial affidavit as required by Practice Book § 25-30. The court explained in relevant part: "Our cases have uniformly emphasized the need for full and frank disclosure in that affidavit. A court is entitled to rely upon the truth and accuracy of sworn statements required by [Practice Book § 25-30 (formerly Practice Book § 463)], and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding. . . . These sworn statements have great significance in domestic disputes in that they serve to facilitate the process and avoid the necessity of testimony in public by persons still married to each other regarding the circumstances of their formerly private existence. . . . Thus, the requirement of diligence in discovering fraud is inconsistent with the requirement of full disclosure because it imposes on the innocent injured party the duty to discover that which the wrongdoer already is legally obligated to disclose. . . .

"This principle of complete disclosure is consistent with the notion that the settlement of a marital dissolution case is not like the settlement of an accident case. It stamps with finality the end of a marriage. . . . Courts simply should not countenance either party to such a unique human relationship dealing with each other at arms' length. Whatever honesty there may, or should, have been during the marriage should at least be required by the court at its end. . . .

"We have recognized, furthermore, in the context of an action based upon fraud, that the special relationship between fiduciary and beneficiary compels full disclosure by the fiduciary. . . . Although marital parties are not necessarily in the relationship of fiduciary to beneficiary, we believe that no less disclosure is required of such parties when they come to court seeking to terminate their marriage.

"Finally, the principle of full and frank disclosure, with which the diligence limitation is inconsistent, is essential to our strong policy that the private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine. . . . That goal requires, in turn, that reasonable settlements have been knowingly agreed upon. . . . Our support of that goal will be effective only if we

instill confidence in marital litigants that we require, as a concomitant of the settlement process, such full and frank disclosure from both sides, for then they will be more willing to forego their combat and to settle their dispute privately, secure in the knowledge that they have all the essential information. . . . This principle will, in turn, decrease the need for extensive discovery, and will thereby help to preserve a greater measure of the often sorely tried marital assets for the support of all of the family members." (Citations omitted; internal quotation marks omitted.) Id., 219–22.

In arguing before this court that the trial court's financial orders reflected an abuse of discretion, the plaintiff does not rely solely on the foregoing rationale from *Billington*, but she relies on other appellate decisions that have followed *Billington* and, as the plaintiff correctly observes, unambiguously reaffirm our Supreme Court's "insistence on full and complete disclosure in financial affidavits." Specifically, as it relates to our Supreme Court's broad pronouncement that parties have a duty to fully and completely disclose financial information, the plaintiff refers to *Reville* v. *Reville*, 312 Conn. 428, 451–52, 93 A.3d 1076 (2014) (parties in dissolution cases have duty to disclose assets even if it is unclear whether such assets are subject to distribution), *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007) (reversible error for trial court not to consider motion for contempt brought against consistently noncompliant party in dissolution action), and *Weinstein* v. *Weinstein*, 275 Conn. 671, 882 A.2d 53 (2005) (clearly erroneous for trial court to have found that defendant in dissolution action had not committed fraud by undervaluing business asset on financial affidavit).

The plaintiff relies on *Billington* for the proposition that, once an underreporting of income and assets was proven, the defendant bore the burden of proving fair dealing by clear and convincing evidence. In *Billington*, however, our Supreme Court did not state that parties in a marital relationship are in a fiduciary relationship or that a party in a marital dissolution proceeding bore the burden of proving fair dealing by clear and convincing evidence. As set forth previously, the court in *Billington*, referring to the *duty to disclose* and not the duty of proving fair dealing, stated that although parties in a dissolution action are "not necessarily in the relationship of fiduciary to beneficiary . . . no less disclosure is required of such parties when they come to court seeking to terminate their marriage." *Billington* v. *Billington*, supra, 220 Conn. 221.[6]

In arguing that a fiduciary relationship existed, the plaintiff also relies on *Ramin* v. *Ramin*, supra, 281 Conn. 324, in which our Supreme Court once again addressed the duty of disclosure between parties in dissolution actions. In *Ramin*, our Supreme Court addressed a claim that is distinguishable from the claim

presently before us. Specifically, the plaintiff in *Ramin* claimed that the trial court had abused its discretion by declining to rule on her motions for contempt and for sanctions, which were based on the defendant's repeated failure to comply with the court's discovery orders. Id., 330. Thus, our Supreme Court in *Ramin* did not have occasion to address the burden shifting argument at issue here. Although, in the context of its analysis, our Supreme Court reiterated that parties in a dissolution action have a *fiduciary-like obligation to fully disclose financial information*, it did not state that such parties were in a fiduciary relationship or that a party in a dissolution proceeding had a burden of proving fair dealing by clear and convincing evidence. Instead, as relevant, the court in *Ramin* stated that a defendant who had "breached his fiduciary-like obligations of discovery to the plaintiff as ordered by the court . . . should bear the burden of establishing that his breach of that obligation did not harm the beneficiary of that obligation." Id., 349–50.

The plaintiff also draws our attention to *Dietter* v. *Dietter*, 54 Conn. App. 481, 737 A.2d 926, cert. denied, 252 Conn. 906, 743 A.2d 617 (1999), for the broad proposition that courts have shifted the burden of proving fair dealing in "dissolution of marriage cases." The plaintiff's reliance on *Dietter* is undermined by the fact that it was not merely an appeal from a judgment in a dissolution action. In *Dietter*, the plaintiff husband brought a dissolution action against the defendant wife. Id., 482. The defendant wife, however, brought a cross complaint against the plaintiff, the plaintiff's mother, and the plaintiff's brothers, wherein she alleged that they fraudulently had transferred assets from a corporation in which she was a shareholder, thereby dissipating the marital estate. Id., 482–83. On appeal, despite obtaining a favorable judgment with respect to part of her cross complaint, the defendant argued with respect to the other part of her cross complaint that the trial court improperly had allocated to her the burden of proving that the transactions on which she relied amounted to fraudulent transfers from the marital estate. Id., 488.

It is important that the defendant in *Dietter* did not claim that the plaintiff, in his capacity *as her spouse*, owed her a fiduciary duty. Instead, she claimed that the plaintiff, *as an officer of a corporation of which she was a shareholder*, "owed her a fiduciary duty as a shareholder" and that the court "should have allocated the burden of proof to the plaintiff to establish fair and equitable dealing by clear and convincing evidence." Id.

In rejecting the defendant's burden shifting claim, this court in *Dietter* reasoned in relevant part: "The second count of the defendant's amended cross complaint alleged neither that the plaintiff owed her a fiduciary duty nor that the plaintiff breached a fiduciary

duty. Practice Book § 10-4 provides, however, that '[i]t is unnecessary to allege any promise or duty which the law implies from the facts pleaded.' In the present case, a fiduciary duty cannot be implied from the facts pleaded because the second count of the amended cross complaint identified the plaintiff neither as a fiduciary nor as an officer or director of [the corporation at issue], and *did not set forth any facts from which a fiduciary duty might be implied.* . . . Because the second count of the amended cross complaint is most accurately described as claiming that the plaintiff, *acting in his capacity as a spouse and not as a fiduciary*, fraudulently transferred assets from the marital estate, we conclude that the trial court properly allocated the burden of proof on the second count of the amended cross complaint to the defendant." (Citation omitted; emphasis added.) Id., 489–90.

In light of the foregoing analysis, *Dietter* cannot reasonably be interpreted to support the proposition that a party in a marital dissolution action who has been found to have underreported income or assets is a fiduciary or that such party, by virtue of their party status in a dissolution action, bears the burden of proving fair dealing by clear and convincing evidence. To the contrary, this court in *Dietter* reasoned that, in the absence of additional facts from which a fiduciary relationship reasonably may be inferred, an action brought against a spouse is not the legal equivalent of an action brought against a fiduciary.

The plaintiff does not draw our attention to any authority that directly supports her burden shifting argument, and we are not aware of any. To the contrary, our Supreme Court, in *Reville* v. *Reville*, supra, 312 Conn. 467–71, rejected such a burden shifting argument. In *Reville*, a plaintiff in a dissolution action claimed under the plain error doctrine that "once it is established that a party to a dissolution action has failed to list a substantial asset either on his or her financial affidavit or in open court, the burden should shift to that party to prove, by clear and convincing evidence, either the absence of fraud or that the nondisclosure was harmless." Id., 467. Our Supreme Court rejected this argument, noting that, under well settled appellate precedent, the party asserting fraud as a basis of setting aside financial orders in a dissolution judgment bears the burden of proving fraud by clear and convincing evidence. Id., 469.

As we have observed, our case law reflects that parties in a dissolution action are "[u]nlike civil litigants who stand at arm's length from one another . . . ." *Duart* v. *Dept. of Correction*, 303 Conn. 479, 501, 34 A.3d 343 (2012). For this reason, and because parties in a dissolution action need information about each other's income and assets to pursue their cause of action, our case law imposes a duty on parties in a

dissolution action to fully and frankly disclose their financial information. Our decisional law, however, has limited this fiduciary-like duty to disclosure and, in light of that disclosure obligation, to proving the absence of harm once proper disclosure has not occurred; our courts have not expressly extended such an obligation to prove with clear and convincing evidence that fair dealing has occurred. Moreover, we are not persuaded that *Billington* and its progeny should be interpreted to suggest that it is necessary or appropriate to extend this rationale so as to require a party in a dissolution action who has been found to have underreported income or assets to prove fair dealing with clear and convincing evidence. In light of the foregoing, we reject the plaintiff's burden shifting argument.

B

In the second subpart of this claim, the plaintiff claims that the court's finding that she failed to prove fraud was clearly erroneous. We disagree.

In support of this claim, the plaintiff argues in relevant part: "There was no evidence whatsoever that the defendant's numerous omissions of substantial income and assets on his financial affidavit were the product of fair dealing, and any conclusion that the defendant engaged in fair dealing would be clearly erroneous in light of the evidence at trial." The plaintiff describes the evidence of fraud to be "overwhelming" and relies on the fact that the court's findings reflect that it found "a clear pattern of nondisclosure of substantial income and numerous valuable assets on three financial affidavits." Moreover, the plaintiff argues, "[t]his pattern of nondisclosure was accompanied by a sustained pattern of affirmative efforts by the defendant to prevent the plaintiff from discovering the true extent of the defendant's income and his assets through discovery." The plaintiff analogizes the facts of the present case with those in *Weinstein* v. *Weinstein*, supra, 275 Conn. 688–95, in which our Supreme Court found error in a trial court's finding that fraud in a dissolution action had not been proven.

As our Supreme Court in *Billington* observed, "[t]he elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Billington* v. *Billington*, supra, 220 Conn. 217. As the plaintiff correctly acknowledges, "[t]he determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances. . . . Such a fact is, then, not ordinarily proven by direct evidence, but rather, by inference from other facts proven—the indicia or badges of fraud." (Internal quotation marks omitted.) *Dietter* v. *Dietter*, supra, 54 Conn. App. 487. Issues

of mental state generally, and issues of intent in particular, are inherently fact bound. Resolution of such issues depends on the trier of fact's assessment of relevant facts, as well as any relevant testimony concerning the events at issue. In a case such as the present case, in which the party alleged to have acted fraudulently has testified at length about his conduct, we would expect the trier of fact's firsthand observations of his testimony to shed additional light on an assessment of his intent.

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Milazzo-Panico* v. *Panico*, 103 Conn. App. 464, 467–68, 929 A.2d 351 (2007).

The plaintiff seemingly argues that, in light of the court's finding that an underreporting of income and assets occurred to the extent that it did, as well as the fact that the parties engaged in discovery disputes concerning the defendant's finances, the court was obligated as a matter of law to find that fraud had occurred. The plaintiff relies on *Weinstein*, yet does not draw our attention to unmistakable evidence that suggests that the defendant acted with a fraudulent intent, let alone the type of "clear and convincing evidence" that compelled our Supreme Court to find that fraud had occurred in that case. *Weinstein* v. *Weinstein*, supra, 275 Conn. 692–93 (determining that *defendant's own testimony* concerning valuation of asset at issue was clear and convincing evidence that he knowingly misrepresented his worth in his financial affidavit).

At trial, following the granting of the motion to open the judgment, the defendant testified extensively in an attempt to refute the plaintiff's argument that the evidence reflected wrongdoing on his part with respect to the disclosure of financial information. The defendant testified that he was self-represented at the time of the original dissolution trial and, in great detail, testified about the information that he provided on his financial affidavits in 2007 and why he set forth some of the inaccurate information about his income and assets. It suffices to observe that, with respect to the contested issue of fraud,[7] the defendant attempted to demonstrate that his disclosures were made in good faith, even if some of them were incorrect because, for example, they were made in haste or upon incomplete information. Thereafter, at the conclusion of the trial, defense counsel argued that, contrary to the plaintiff's arguments, the defendant had not attempted "to hide, mislead, or provide false information to the plaintiff with respect to his financial situation in order to avoid financial liability in the dissolution proceedings [in] 2007." The

plaintiff makes no effort to refute the defendant's highly relevant testimony. Instead, she broadly relies on the court's finding that a significant underreporting of assets and income had occurred and that the parties' litigation was marked by discovery disputes concerning the defendant's finances.

The court, having had a firsthand opportunity to observe the defendant and to evaluate his testimony, found that an underreporting of income and assets had occurred, but did not make findings that were consistent with the plaintiff's argument that underreporting was accompanied by a fraudulent intent. Far from there being "no evidence whatsoever" that the defendant did not intend to defraud, as the plaintiff argues, the record contains evidence to support a finding that the underreporting of income and assets that occurred was not necessarily the result of fraud. The defendant's testimony, and the inferences that the court reasonably could have drawn therefrom, support the court's finding and, absent the type of compelling evidence of fraud that was presented in *Weinstein*, we are not persuaded that a factual mistake was made by the trial court.

## II

Second, the plaintiff claims that the court erred with respect to its alimony award. The plaintiff argues that the court's award was improper because, in comparison with the original award, it decreased the alimony term and eliminated her right to seek an extension of the alimony term. Also, the plaintiff argues that the amount of the court's alimony award undermined the requirement that parties in dissolution actions fully and frankly disclose their income by way of financial affidavits. We disagree.

The plaintiff argues that, although the court correctly determined that there were substantial discrepancies between what the defendant reported to be his self-employment income at the time of the original dissolution judgment in 2007 and what his actual self-employment income was proven to be, the court failed to assess accurately the extent of these discrepancies. As we stated previously in this opinion, the court found that, at the time of the original decree, the defendant failed to disclose accurately his self-employment income on his financial affidavit. The court observed that, in a financial affidavit dated September 12, 2007, the defendant disclosed his weekly gross self-employment income to be $2319. In a financial affidavit dated April 26, 2013, however, he disclosed his gross self-employment income (as of the time of the original dissolution in 2007) to have been $3506. The court calculated the defendant's weekly gross income to have been $3506 and his weekly net income to have been $2061.[8] The court stated that the difference between what the defendant had reported in the September 12, 2007 affidavit and what he reported in the April 26, 2013 affidavit was

$1187 "or 51 percent."

In discussing the extent to which the defendant underreported his weekly gross self-employment income at the time of the original decree, the plaintiff argues that the court should have relied not on the September 12, 2007 affidavit, but on the undisputed evidence that, in his October 2, 2007 financial affidavit, the defendant represented that such income was $1958, and that he had led the court to believe that his income from all sources was only $100,000 per year. The plaintiff argues that when the defendant's actual self-employment gross income is compared with the self-employment gross income that the defendant reported on October 2, 2007, the date on which the court rendered its original judgment of dissolution, "the differential is 79 percent, not 51 percent."[9]

The plaintiff also draws our attention to evidence that, even during the proceedings after the court granted the plaintiff's motion to open the judgment which had been brought on the basis of fraud but was granted in accordance with the parties' stipulation, the defendant continued to fail to disclose the extent of his income in the years leading up to the dissolution in 2007. The plaintiff, referring to evidence presented to the court as well as the defendant's replies to interrogatories, argues that the defendant exhibited "a pervasive pattern of misrepresenting his income on his financial affidavits and sworn interrogatory responses, which came to light only after the plaintiff obtained a commission to subpoena [an out-of-state employer of the defendant] over the defendant's objection that [such discovery] was a fishing expedition . . . ."

The plaintiff argues that, in light of this factual background which, she asserts, reflected the defendant's malfeasance, the court's orders concerning alimony reflected an abuse of discretion. In relevant part, the plaintiff argues: "Rather than promote and enforce the obligation of full and frank disclosure in financial affidavits . . . [the] trial court's judgment had the opposite effect. . . . It rewarded, rather than redressed, the defendant's repeated and serious omissions of income on his financial affidavit and his subsequent affirmative attempts to prevent the plaintiff from discovering his real income by obtaining the information directly from [the defendant's out-of-state employer]." The plaintiff, relies heavily on *Billington* v. *Billington*, supra, 220 Conn. 212, and argues that the court's "reduction of the alimony term and elimination of the plaintiff's right to seek an extension of the alimony term cannot be reconciled with [our] Supreme Court's jurisprudence concerning the misrepresentation of substantial assets and income in a financial affidavit." Furthermore, the plaintiff argues that, in light of the evidence concerning the defendant's pattern of concealing his income, the court abused its discretion in the amount of alimony

that it awarded her.[10] The plaintiff argues: "Here, an 11 percent increase in alimony in the face of an approximately 80 percent underreporting of income simply cannot withstand scrutiny under [*Billington* v. *Billington*, supra, 212,] and its progeny." The plaintiff urges us to conclude that the amount of the alimony award failed "adequately to redress the defendant's fraudulent and material misrepresentations on his financial affidavit, which resulted in a substantial injustice to the plaintiff."

The plaintiff, challenging the propriety of the court's new alimony orders, expressly invokes our abuse of discretion standard of review. "We review financial awards in dissolution actions under an abuse of discretion standard. . . . In order to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . .

"The generally accepted purpose of . . . alimony is to enable a spouse who is disadvantaged through divorce to enjoy a standard of living commensurate with the standard of living during marriage. . . . In addition to the marital standard of living, the trial court must also consider the factors in [General Statutes] § 46b-82 when awarding alimony. . . .

"General Statutes § 46b-82 (a) provides in relevant part that [i]n determining whether alimony shall be awarded, and the duration and amount of the award, the court shall consider the evidence presented by each party and shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties and the [division of property made] pursuant to [General Statutes §] 46b-81 . . . . The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . We note also that [t]he trial court may place varying degrees of importance on each criterion according to the factual circumstances of each case. . . . There is no additional requirement that the court specifically state how it weighed the statutory criteria or explain in detail the importance assigned to each statutory factor. . . . [T]he record must indicate the basis for the trial court's award. . . . There must be sufficient evidence to support the trial court's finding that the spouse should receive time limited alimony for the particular duration established. If the time period for the periodic alimony is logically inconsistent with the facts found or the evidence, it cannot stand." (Citations omitted; internal quotation marks omitted.) *Horey* v. *Horey*, 172 Conn. App. 735, 740–41, 161 A.3d 579 (2017); see also *Hammel*

v. *Hammel*, 158 Conn. App. 827, 835–36, 120 A.3d 1259 (2015) (financial orders in dissolution cases are entitled to presumption of correctness when based on facts and relevant statutory criteria but nonetheless warrant reversal if they are shown to be logically inconsistent or product of mistake).

In part I, we discussed the rationale set forth by our Supreme Court in *Billington.* As discussed previously, *Billington* highlights the obligation of dissolution litigants to fully and frankly disclose their assets in financial affidavits. *Billington* and its progeny make clear that courts must insist on full and complete disclosure and must not hesitate to take appropriate action in the face of material misrepresentations on a party's financial affidavit.

In the present case, the court did not hesitate to act. Acting on the agreement of the parties, the court opened the original dissolution judgment. On the basis of the new financial information brought before it, the court entered new financial orders concerning, among other things, alimony, property, and attorney's fees. Although the plaintiff introduced evidence that, in her view, reflected that any underreporting of income or assets by the defendant was the product of an attempt to defraud her, the court did not make such a finding. During the trial, the court made clear that it was not ruling on a motion for contempt, but was evaluating the defendant's income and the marital estate after the parties had *agreed* to open the judgment of dissolution to permit the court to reconsider the financial orders that were entered at the time of the original judgment of dissolution. Nevertheless, the plaintiff submitted evidence and argued her claim that the defendant had acted in a fraudulent manner at the time of the original dissolution by submitting inaccurate financial affidavits, which the defendant contested.

After affording the parties an ample opportunity to present relevant evidence, the court found that an underreporting of income by the defendant, in fact, had occurred. In an articulation of its decision, the court stated "that the [defendant] had originally failed to fully disclose some of his assets and [had] understated his income, [but] it made neither an express finding that his failure to do so amounted to fraud, nor, for that matter, that his behavior did not amount to fraud." The court stated: "In short, under all the circumstances, the [plaintiff] failed to meet her burden to establish fraud to the satisfaction of the court by clear and convincing evidence." (Internal quotation marks omitted.)

Nothing in the record suggests that the court acted arbitrarily in rendering its new financial orders. To the contrary, the court stated that it considered the evidence and "General Statutes §§ 46b-56, 46b-56a, 46b-56c, 46b-81, 46b-82, 46b-84, and 46b-215a, including the Child Support and Arrearage Guidelines Regulations

. . . ." As we discussed previously in this opinion, the court provided a remedy to the plaintiff for the defendant's failure to disclose assets and income fully. It altered the financial orders of the original dissolution judgment in a variety of ways. It is undisputed that the court set a new alimony award as of the date of the original dissolution judgment in 2013, thereby increasing her award by 11 percent and creating a significant arrearage in her favor. The court explained the manner in which it calculated its new alimony award, and the plaintiff does not claim error in the court's methodology.

The plaintiff argues that the court was obligated to increase the amount of alimony to a greater extent, and she focuses on the fact that the court shortened the alimony term by several months and made the award's term nonmodifiable. The plaintiff inherently suggests in her arguments that the court was obligated to *penalize* the defendant for wrongdoing in his disclosure of income and assets. Contrary to her characterization of the defendant's conduct as being part of a "pervasive pattern of misrepresenting income," the court did not find any wrongdoing on the defendant's part, and expressly found that the plaintiff had failed to prove fraud. The court did not couch its decision in terms of wrongdoing by the defendant, but merely stated that the defendant had not disclosed accurately his income and assets at the time of the original judgment of dissolution. Although the plaintiff claims that the court should have found that the defendant acted fraudulently, we rejected that claim in part I of this opinion. The court unmistakably endeavored to craft new financial orders that were consistent with the principles that governed the original decree, not to penalize the defendant.

The case law on which the plaintiff relies requires the court to take action when presented with an inaccurate disclosure by a party in a dissolution action, yet the plaintiff does not present this court with any authority in support of her argument that in circumstances such as those before us, in which fraud has not been proven, the court is obligated to act in a *punitive* manner against a party who has not accurately disclosed income or assets. Stated otherwise, there is no precise mathematical formula that the court must follow in setting new financial orders in such circumstances. Rather, its award is subject to review for an abuse of discretion. In the present case, in which the plaintiff argues that the defendant should be penalized but has not succeeded in demonstrating that fraud occurred, the plaintiff has failed to demonstrate that the court's alimony award reflected an abuse of discretion.

### III

Third, the plaintiff claims that the court erred with respect to its distribution of five marital assets that

came to light after the court opened the judgment. We disagree.

Among its many financial orders, the court ordered the defendant to pay the plaintiff $106,042 within sixty days. This amount included, among other things, the plaintiff's share of some of the marital assets that the defendant either failed to disclose or undervalued at the time of the original dissolution judgment. Additionally, the court ordered that qualified domestic relations orders be prepared to equally distribute two retirement accounts held by the defendant through his employer or former employer. The court found that at the time of the original dissolution judgment, the defendant had not reported these accounts on his financial affidavit.

In the present claim, the plaintiff does not challenge the court's factual findings with respect to the parties' marital assets, but claims that the court abused its discretion in its distribution of five specific marital assets. Specifically, the plaintiff draws our attention to the court's orders concerning an "E-Trade account," tax refunds, a "UBM 401k" account, a "Fidelity 401k" account, and a "Morgan Stanley" account.

With respect to these five specific assets, the court found in relevant part, as follows: "That the original financial affidavit of the [defendant] as filed with the court omitted two retirement accounts, to wit: a UBM [401k] plan having a value of approximately $49,000 and a Fidelity [401k] plan having a value of approximately $16,000; that it is equitable and appropriate that the [plaintiff] receive one half thereof, together with all interest and gains accrued to the date of actual distribution by means of a Qualified Domestic Relations Order . . . consistent with the intent of the parties to divide the marital assets equally." Additionally, the court found: "That the evidence supports a finding that the [defendant] has received state and federal income tax refunds for the years 2004 through 2007 in the amount of $104,163; that he failed to disclose this fact at the time of the entry of the dissolution and the execution of the stipulation for judgment; that he has applied said sum to his own use; that there is no credible evidence that he has filed amended returns for said years; and that it is equitable and appropriate that the [plaintiff] share equally in said sum." In a written correction to its memorandum of decision, the court awarded the plaintiff $34,877, which it found was half of the value of an E-Trade account held by the defendant that, the plaintiff argued, had not been disclosed at the time of the original dissolution judgment. The court expressly declined to enter any orders distributing a Morgan Stanley account that the defendant did not disclose at the time of the original dissolution judgment because, in the court's view, it was a "custodial account" and the court "lacks jurisdiction" to enter orders to distribute it.[11]

The plaintiff, referring to some of the evidence that she presented at trial after the court opened the judgment, argues that the court's decision to divide the assets at issue equally between the parties reflected an abuse of discretion. The plaintiff argues: "In short, despite the clear evidence that the defendant had engaged in a pattern and practice of failing to disclose substantial assets, in addition to substantial income, on his financial affidavit [at the time of the original dissolution judgment], the trial court simply divided the undisclosed assets—including [the] E-Trade [account] and the large tax refunds—between the parties 50/50, the same percentage split set forth in the original judgment for the accounts that the defendant disclosed. Here again, the trial court's judgment was an abuse of discretion because it cannot reasonably be harmonized with *Billington* and its progeny. If, after a retrial, the percentage division of disclosed assets and undisclosed assets is the same, why would a rational self-interested actor engage in full and frank disclosure? He wouldn't. The rational course of action would [be] to conceal assets, or at least some of them. One might not be caught, and even if caught, the result will be no worse than it would have been had full disclosure been made." The plaintiff urges this court to conclude that, in light of evidence that the defendant engaged in a "campaign" to prevent the plaintiff from obtaining information about at least some of the marital assets at issue, the court lacked the discretion to divide the assets in the same proportion as those assets that had been fully disclosed at the time of the original dissolution judgment.

Similar to the claim presented in part II of this opinion, the plaintiff's arguments in the present claim rest on a factual premise that does not exist. The plaintiff interprets the evidence presented at trial as clear and unequivocal proof that the defendant's failure to disclose income and assets was the product of fraud, and that he attempted to conceal the assets from her up and through the time of trial. Such a characterization of the evidence was contested at trial. The plaintiff attempted to persuade the court that the defendant had concealed assets, misled the plaintiff, or knowingly provided false information to defraud the plaintiff. The court, however, did not find that such conduct had occurred. Instead, the court found that the defendant "had originally failed to fully disclose some of his assets and [had] understated his income" and the court "made neither an express finding that his failure to do so amounted to fraud, nor, for that matter, that his behavior did not amount to fraud." In part I of this opinion, we rejected the plaintiff's claim that the court's finding that fraud had not been proven was clearly erroneous.

In part II of this opinion, we set forth the discretionary standard of review that applies to a court's financial

orders in a dissolution case. "That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." *Casey* v. *Casey*, 82 Conn. App. 378, 383, 844 A.2d 250 (2004). The court's division of the assets at issue does not appear to have been arbitrarily made or the product of mistake, but was expressly based on the parties' intent to divide marital assets evenly, as was reflected in their original stipulation. In light of the court's finding that the plaintiff did not prove that the defendant acted in a fraudulent manner, the plaintiff's argument that the court unfairly rewarded the defendant for wrongful conduct with respect to his financial affidavit is unpersuasive. We do not interpret the precedent on which the plaintiff relies, including *Billington*, *Weinstein*, *Ramin*, or *Reville*, to have required the court to divide the assets at issue differently, nor are we persuaded that the court's decision reasonably could be interpreted as rewarding the defendant for his failure to fully disclose one or more assets in a forthcoming manner.

### IV

Fourth, the plaintiff argues that the court erred with respect to its award of attorney's fees. We disagree.

In its memorandum of decision, the court stated that it had reviewed an affidavit of counsel fees submitted by the plaintiff's previous attorney, Joseph T. O'Connor. This affidavit for fees and disbursements totaling $16,640.87 was dated September 29, 2011, and it covered the period of November 11, 2009 through March 3, 2011. The court also stated that it had reviewed an affidavit of counsel fees submitted by the plaintiff's attorney, Eric Higgins. This affidavit for fees and disbursements totaling $40,040.09 was dated May 10, 2012, and it covered the period of August 11, 2010 through May 9, 2012. The court stated that it had found "said fees to be reasonable under all the circumstances; and that it is equitable and appropriate that the [defendant] pay a portion thereof." The court ordered the defendant to pay $40,000 in attorney's fees; $20,000 to be paid directly to the plaintiff, $10,000 to be paid to O'Connor, and $10,000 to be paid to Higgins.

In a motion to reargue filed by the plaintiff following the court's decision, she argued that it appeared that the court had overlooked an affidavit of attorney's fees that the plaintiff's attorney, Higgins, had submitted to the court, absent objection, on the last day of the trial on July 10, 2013.[12] In its original decision, the court expressly referred to Higgins' prior affidavit, which covered Higgins' services from August 11, 2010 through May 9, 2012. In its corrected decision of September 27, 2013, the court expressly referred to Higgins' affidavit

dated July 10, 2013, which covered the period of August 11, 2010 through July 10, 2013. The July 10, 2013 affidavit set forth fees and disbursements in the amount of $159,657.82.

In its corrected decision, the court modified its original decision in relevant part by stating that it had reviewed the attorney's fees affidavit submitted by O'Connor and the attorney's fees affidavit submitted by Higgins, which covered the period of August 11, 2010 through July 10, 2013. The court stated: "[W]hile the court finds said fees to be reasonable in light of the services rendered . . . it further finds said fees to be disproportionately high when compared to the results achieved; and that it is equitable and appropriate that the [defendant] pay a portion thereof." The court "decline[d] to amend the relief already granted, which it believe[d] to be fair under all the circumstances."[13]

The plaintiff argues that the court's award reflected an abuse of discretion because "the trial court did [not] award a single dollar for fourteen months' worth of work" between May 10, 2012, and July 10, 2013. As the plaintiff observes, this fourteen month period of time encompassed discovery, trial preparation, and the trial itself, which took place over six days. Moreover, the plaintiff argues that a greater award of attorney's fees was required because the defendant engaged in "egregious litigation misconduct" and, under *Ramin* v. *Ramin*, supra, 281 Conn. 354, it is appropriate that the defendant bear the burden of increased fees that were occasioned by his misconduct. The plaintiff observes that, in *Ramin*, our Supreme Court stated: "Allowing recovery for attorney's fees incurred due to litigation misconduct will discourage the recalcitrant marital litigant from evading his obligations of full and frank disclosure, and will encourage compliance with those obligations. When a marital litigant who does play by the rules has to expend her own funds to pay her attorneys significant amounts of money to enforce discovery orders against, and uncover assets hidden or transferred by, the other marital litigant who is flouting those rules, and when other orders of the court have not adequately addressed that wrongdoing by one party and harm to the other, it is only fair that the wrongdoer compensate the innocent injured party [for having] to discover that which the wrongdoer already [was] legally obligated to disclose." (Internal quotation marks omitted.) Id., 354–55.

The plaintiff also argues that the court did not address adequately the defendant's misconduct by means of its other orders and that "the trial court's failure to award any attorneys' fees whatsoever for the fourteen month period of time leading up to and including a six day trial was unreasonable, an abuse of the trial court's discretion, and an abdication of the trial court's responsibility under *Billington* and its progeny to both redress

the defendant's misconduct, deter others similarly situated from engaging in similar misconduct, and insure that the consequences of the defendant's misconduct be borne by the defendant, not the innocent plaintiff.''

Initially, we observe that the parties disagree with respect to whether, when the court awarded attorney's fees in its original decision, it overlooked Higgins' July 10, 2013 affidavit. The plaintiff draws our attention to the fact that, in the court's original decision, it did not refer to Higgins' July 10, 2013 affidavit, but it referred to his May 10, 2012 affidavit. Also, the plaintiff draws our attention to the fact that, in its corrected decision, the court stated that it had reviewed the later affidavit but "[d]eclined to amend the relief already granted." From these facts, the plaintiff urges us to infer that the court failed to consider Higgins' later affidavit in awarding attorney's fees and, consequently, its $40,000 attorney's fee award was based on only a portion of the attorney's fees incurred by the plaintiff in this matter.

It is a fundamental principle of appellate review that "our appellate courts do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Citations omitted; internal quotation marks omitted.) *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013). "[T]he trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary." (Internal quotation marks omitted.) *Kaczynski* v. *Kaczynski*, 294 Conn. 121, 129, 981 A.2d 1068 (2009).

The record is ambiguous with respect to whether, at the time of the court's original decision, it considered Higgins' July 10, 2013 affidavit of attorney's fees. The court's explicit reference, in its original decision, to its having reviewed O'Connor's affidavit and Higgins' affidavit of May 10, 2012, certainly suggests that, at that time, the court improperly failed to consider Higgins' affidavit of July 10, 2013. Yet, we recognize that, in setting forth its award, the court was not obligated to refer to all of the matters in the record on which it relied, and its failure to refer to the later filed affidavit in its original decision does not necessarily reflect that, at that time, it overlooked it. We disagree with the plaintiff that in the court's corrected decision it shed any light on whether it previously had overlooked the July 10, 2013 affidavit. The corrected decision, however, dispels any ambiguity with respect to whether the court considered the July 10, 2013 affidavit in arriving at its final judgment. There, the court unambiguously stated that it had, in fact, considered the affidavit.

Even if we were to presume that the court overlooked the July 10, 2013 affidavit in its initial decision, the plaintiff must demonstrate that reversible error exists

in light of the court's final decision. Our review of the trial court's judgment encompasses both its original and corrected decisions. In neither its original nor corrected decisions did the court state that it would not consider the later affidavit or that it would not award fees for Higgins' representation up until July 10, 2013. Rather, in its corrected decision, the court, relying on the later affidavit, explained that it was "equitable and appropriate" under the circumstances for the defendant to pay $40,000, which represented a portion of the fees incurred by the plaintiff in this case because, in its view, the remainder of the fees at issue, although "reasonable in light of the services rendered" were "disproportionately high when compared with the results achieved." Thus, we are not faced with a situation, as the plaintiff suggests, in which the court improperly refused to consider awarding fees allegedly incurred during a substantial portion of the litigation.

The plaintiff does not draw our attention to any authority in support of the proposition that, in light of the court's finding that the defendant had failed to disclose fully his income and assets at the time of the original dissolution judgment, it was obligated to award the plaintiff all of the fees incurred by her. "The abuse of discretion standard of review applies when reviewing a trial court's decision to [grant or] deny an award of attorney's fees. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Munro* v. *Munoz*, 146 Conn. App. 853, 858, 81 A.3d 252 (2013).

"Our Supreme Court consistently has noted that [trial] courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described. . . . Because of this general knowledge, [t]he court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues." (Citation omitted; internal quotation marks omitted.) *Rubenstein* v. *Rubenstein*, 107 Conn. App. 488, 503, 945 A.2d 1043, cert. denied, 289 Conn. 948, 960 A.2d 1037 (2008). The wide range of factors that a court properly may consider in determining reasonable compensation to an attorney are summarized in Rule 1.5 of the Rules of Professional Conduct. *O'Brien* v. *Seyer*, 183 Conn. 199, 206, 439 A.2d 292 (1981); *Esposito* v. *Esposito*, 71 Conn. App. 744, 749–50, 804 A.2d 846 (2002). These factors include: "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) The likelihood, if made known to the client, that the acceptance of the

particular employment will preclude other employment by the lawyer; (3) The fee customarily charged in the locality for similar legal services; (4) *The amount involved and the results obtained*; (5) The time limitations imposed by the client or by the circumstances; (6) The nature and length of the professional relationship with the client; (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) Whether the fee is fixed or contingent." (Emphasis added.) Rules of Professional Conduct 1.5 (a); see also *Glastonbury* v. *Sakon*, 184 Conn. App. 385, 393–94, A.3d (2018) (setting forth factors).

Here, the court's decision reflects that it considered the reasonableness of the fees generally, but it focused specifically on the fact that the plaintiff's attorneys submitted affidavits for fees totaling $176,298.69, an amount it found to be "disproportionately high when compared to the results achieved . . . ." In light of the precedent set forth previously, the court's consideration of the results obtained by the plaintiff legally was appropriate. The plaintiff does not challenge the court's determination that the fees were disproportionately high when compared to the results actually obtained by her but, once more, relies on her belief that the defendant engaged in fraudulent conduct. She argues that the court's award reflected an abuse of discretion because the defendant defrauded the plaintiff by failing to disclose income and assets at the time of the original judgment and up and until the time of trial engaged in "determined, concerted efforts to prevent the plaintiff from learning the truth" about his assets.

Similar to the claims that we rejected in parts II and III of this opinion, the defendant's challenge to the court's award of attorney's fees is flawed because it is based on a factual premise that does not exist, namely, that the defendant acted in a fraudulent manner with respect to his disclosure of income and assets. Relying on our previous analysis in this opinion, we observe that, although the court agreed with the plaintiff that the defendant underreported income and assets at the time of the original dissolution judgment, the court expressly found that the plaintiff did not sustain her burden of proving that the defendant acted fraudulently with respect to his financial affidavit. Although the plaintiff attempts to analogize the facts of the present case to those in *Ramin*, the court in the present case did not find that the defendant engaged in egregious litigation misconduct. The issue of whether the defendant acted fraudulently in his financial disclosure and in connection with discovery in the present trial was hotly contested, but the court did not find that the plaintiff had sustained her burden of proving fraud. The court found that the defendant failed to fulfill his obligation to disclose fully his income and his assets, but did not attribute this failure to fraud. As a result of the failures in disclosure, however, the court not only modified several

of its financial orders, but awarded the plaintiff $40,000 in attorney's fees. The plaintiff challenges the court's exercise of its discretion in awarding attorney's fees but has failed to demonstrate that the court's factual finding concerning fraud was clearly erroneous.

We are not persuaded by the argument rejected by the trial court that the defendant sought to defraud and that the court erroneously failed to penalize the defendant by awarding the plaintiff greater alimony and asset awards. In light of the foregoing, we conclude that the plaintiff has failed to demonstrate that the court's award of attorney's fees reflects an abuse of discretion.

V

Lastly, the plaintiff claims that the court erred by failing in its financial orders to promote full and frank disclosure in financial affidavits and by failing to address adequately the defendant's omission of substantial income and assets from his financial affidavits. We disagree.

The plaintiff argues that even if the court's individual financial orders did not reflect an abuse of discretion, the complete mosaic of the court's orders "surely did." According to the plaintiff, "the trial court's inadequate awards of alimony, property and attorney's fees compounded to produce a result that was disproportionate to the magnitude of the defendant's numerous, substantial nondisclosures on the financial affidavit that he submitted at the time of the original judgment, [and] his recalcitrance in the discovery process . . . . In their aggregate, the trial court's orders constituted an abuse of discretion because they plainly failed adequately to enforce the defendant's duty to fully and fairly disclose his assets on his financial affidavit." The plaintiff urges us to conclude that, under the circumstances, the court was obligated "adequately to redress the defendant's fraudulent and material misrepresentations in his financial affidavit" by providing her with more favorable financial orders, but that it did not do so.

The present claim requires little discussion because, similar to the claims addressed in parts II, III, and IV of this opinion, it is based on the plaintiff's characterization of the defendant's conduct as fraudulent in nature. The court found that discrepancies existed with respect to the defendant's assets and income, and it unambiguously provided the plaintiff with a remedy. As we have stated previously, however, the court expressly found that the plaintiff had not proven fraud, and the plaintiff has failed to demonstrate that this critical factual finding was clearly erroneous. Having rejected the plaintiff's claims that the court's alimony, property, and attorney's fees orders were improper when viewed in light of alleged but not proven fraudulent conduct by the defendant, we likewise conclude that the plaintiff has failed

to prove that the court's orders, when viewed in their entirety, reflected an abuse of discretion on this ground.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In 2007, the parties' marriage was dissolved, and the court entered financial orders. In 2010, the plaintiff brought a motion to open the judgment so that the court could reconsider its financial orders. The plaintiff's motion to open was based on her allegation that, at the time that the court rendered the original dissolution judgment, the defendant, Walter Sing, fraudulently submitted inaccurate financial affidavits on which the court relied. In 2010, the parties stipulated that the judgment could be opened so that the court could reconsider the court's financial orders, but that the opening would not affect the actual dissolution of their marriage. The trial court, *Shay, J.*, opened the original dissolution judgment for the purpose of reconsidering its financial orders. In 2013, the plaintiff brought the present appeal from the judgment rendered by the trial court after it reissued financial orders.

During the pendency of the present appeal, this court asked the parties to submit supplemental briefs addressing the issue of whether, in the absence of a finding of fraud on the part of the defendant, the trial court had subject matter jurisdiction to open the original judgment of dissolution for the purpose of revisiting its financial orders. The parties complied with this order. In 2016, this court, having concluded that the trial court lacked subject matter jurisdiction to grant the plaintiff's motion to open the judgment of dissolution, did not reach the merits of the claims raised by the plaintiff, both in her principal and supplemental appellate briefs, but reversed the judgment of the trial court and remanded the case to the trial court with direction to dismiss the motion to open. *Reinke* v. *Sing*, 162 Conn. App. 674, 133 A.3d 510 (2016). In 2018, following a grant of certification to appeal, our Supreme Court, concluding that the trial court properly exercised its authority in opening the judgment, reversed this court's judgment and remanded the case to this court for consideration of the merits of the plaintiff's claims. *Reinke* v. *Sing*, supra, 328 Conn. 393.

[2] The court, *Shay, J.*, issued an initial decision in this matter on August 23, 2013, and, in response to a motion to reargue filed by the plaintiff, issued a corrected decision on September 27, 2013, in which it modified some of the findings and orders set forth in its initial decision.

[3] In relevant part, this court's order stated: "In the memorandum of decision dated August 23, 2013, the trial court stated that it granted the [plaintiff's] motion to open the judgment by agreement of the parties and 'without a finding of fraud.' . . . [T]he court, *Shay, J.*, is ordered to articulate, for the purpose of determining the court's subject matter jurisdiction, whether it found that there was no fraud or whether it simply was not making an express finding regarding fraud. If the latter, the court is ordered further to articulate whether it found that there had been fraud as to the first judgment of dissolution."

[4] On August 13, 2015, following the trial court's articulation, the plaintiff filed an amended appeal that encompassed the articulation. Thereafter, the plaintiff moved for permission to file a supplemental brief for the purpose of claiming that, in its articulation, the trial court abused its discretion by finding that she failed to prove by clear and convincing evidence that the defendant committed fraud at the time of the original dissolution judgment. This court granted the plaintiff's motion. After the plaintiff filed her supplemental brief, the court granted the defendant permission to file a supplemental reply brief responding to the newly-raised claim of the plaintiff related to the court's finding that she had failed to sustain her burden of proving that fraud had occurred. Thus, the claim and related arguments concerning the plaintiff's first claim in the present appeal are set forth in the parties supplemental briefs.

[5] Although the parties stipulated to open the original judgment of dissolution for the purpose of permitting the court to reconsider its financial orders, and the court did not base its decision to open the judgment on the plaintiff's allegation that the defendant had acted in a fraudulent manner, we address the plaintiff's claim related to fraud because the parties litigated the issue before the trial court, the parties have briefed the issue before this court, and the issue of fraud is integral to the plaintiff's remaining appellate claims, which challenge the court's financial orders and its award of attorney's fees.

[6] "Moreover . . . [l]awyers who represent clients in matrimonial dissolutions have a special responsibility for full and fair disclosure, for a searching

dialogue, about all of the facts that materially affect the client's rights and interests." (Citation omitted; internal quotation marks omitted.) *Weinstein* v. *Weinstein*, supra, 275 Conn. 686–87.

[7] The plaintiff observes that her claims of fraudulent nondisclosure "remained at the center of her case throughout the proceedings."

[8] The court found that, as of October 2, 2007, the net income of the plaintiff was zero.

[9] Although the plaintiff correctly observes that the court did not refer to the October 2, 2007 affidavit in its decision, the plaintiff has not demonstrated that the court's reliance on the September 12, 2007 affidavit likely affected its judgment. Plainly, the court found that "substantial discrepancies" existed between what the defendant reported at the time of the original judgment and what it found to be the defendant's income at the time of trial. The plaintiff does not contest the ultimate findings made by the court concerning the defendant's income and assets in 2007, upon which it based its financial orders. In light of the court's finding with respect to fraud, we are not persuaded that, had the court relied on the October 2, 2007 affidavit, such reliance would have led to a different alimony award.

[10] The plaintiff observes: "Under the original judgment, the total unallocated alimony and support throughout the base alimony term, exclusive of any extension that the plaintiff might obtain, was $359,999.64. The total awarded by the trial court [after opening the judgment] over the alimony term was $399,600, an increase of just 11 percent."

[11] The plaintiff does not dispute that this account "was established for the benefit of [the defendant's] children as well as the children of his sister . . . ." Although the plaintiff lists this custodial account among the marital assets on which she focuses in the present claim, she does not provide any further analysis with respect to the account, let alone a challenge to the jurisdictional ground on which the court expressly declined to enter any orders with respect to the account. Because the plaintiff leaves unchallenged the basis on which the court ruled, we will not disturb its ruling.

[12] The transcript of the proceedings on July 10, 2013, reflects that, absent objection, Higgins presented Judge Shay with an affidavit of attorney's fees on that date. When presented with the affidavit, Judge Shay replied: "[T]hat's fine. I'll make sure we get that logged in." The affidavit does not appear to have been made part of the case file in its own right. Nonetheless, it appears in the trial court file as an exhibit attached to the plaintiff's motion to reargue dated September 11, 2013.

[13] Additionally, we note that, in January, 2012, after the court opened the judgment, the plaintiff brought a motion for contempt and to compel discovery against the defendant. The court granted this motion in part and ordered the defendant to pay $1000 to the plaintiff for attorney's fees incurred by her in connection with the motion. In its original and corrected decisions, the court ordered the defendant to pay this outstanding arrearage to the plaintiff for attorney's fees.

———————————————————